John L. SULLIVAN and Henry R. Potosky

v.

The UNITED STATES.

No. 47–80C.

United States Court of Claims.

Nov. 4, 1981.

Alan E. Wolin, Mineola, N.Y., for plaintiffs; Jack B. Solerwitz, Mineola, N.Y., attorney of record.

Stephen G. Anderson, Washington, D. C., with whom was Acting Asst. Atty. Gen. Thomas S. Martin, Washington, D. C., for defendant. John Meenan, U. S. Secret Service, of counsel.

Before FRIEDMAN, Chief Judge, and DAVIS and SMITH, Judges.

ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

SMITH, Judge:

This civilian pay case, on which we have heard oral argument, is before the court on the parties' cross-motions for summary judgment. Plaintiffs, John L. Sullivan and Henry R. Potosky, are special agent criminal investigators with the United States Secret Service assigned to New York City. They have petitioned the court[1] for additional compensation for overtime alleged to have been capable of regular scheduling and for other relief on behalf of themselves and for all other special agent criminal investigators similarly situated. Since plaintiffs' claims were not representative of any particular class of agents, plaintiffs were not allowed to proceed on behalf of any other agents. The case therefore presents only two basic questions: (1) whether Special Agent Sullivan should have received

---

1. Plaintiffs' action in the United States District Court for the Southern District of New York was transferred, by order of that court dated January 17, 1980, to the United States Court of Claims.

time and one-half pay for the overtime that he incurred on a protection detail assignment and (2) whether the statutory ceiling on aggregate pay, including overtime, requires plaintiffs to perform services for which they are not compensated, in violation of their constitutional rights. For reasons discussed below, we conclude that defendant should prevail on both of these issues, and plaintiffs' prayers for relief are denied.

### Sullivan's Claim

■ On November 28 and 29, 1978, the Secret Service field office in New York City made preparations for the visit on November 30 of then Secretary of the Treasury, W. Michael Blumenthal. Special Agent Sullivan and two other agents were assigned to cover the protection detail of the Secretary. Due to that assignment, it was necessary for Sullivan to remain on duty past the termination of his normal workday and work some 6 hours of overtime on the day of the Secretary's visit. He was credited with the extra 6 hours as administratively uncontrollable overtime and received premium compensation therefor on an annual basis in accordance with the limited pay provisions of 5 U.S.C. § 5545(c)(2) (1976).[2]

It is Sullivan's position that the overtime he incurred as a result of this assignment should not have been classified as administratively uncontrollable overtime. He insists that he was entitled to receive, pursuant to the provisions of 5 U.S.C. § 5542(a)(1) (1976), time and one-half pay. We cannot agree.

Hours of work performed by an employee in excess of the regular 40-hour administrative workweek or the 8-hour administrative workday which have been "officially ordered or approved" constitute overtime. In accordance with 5 U.S.C. § 5542(a)(1), it is to be compensated at an hourly rate equal to one and one-half times the employee's hourly compensation.[3] An employee, however, who occupies a position requiring "substantial amounts of irregular, unscheduled overtime" in which the hours of duty cannot be "controlled administratively" is not compensated on an hourly basis and instead receives premium pay[4] on an annual basis. Congress gave the head of each agency the responsibility for determining the form of compensation to be paid to its employees on overtime assignments.[5] The Secret Service promulgated its own guidelines to govern the appropriateness of the two forms of compensation in various detail assignments. The two methods of compensation were distinguished as follows[6]—

> * * * [R]egularly scheduled overtime is that work in excess of eight hours in a day or forty hours in a week that is regularly scheduled in advance for two or more days in succession * * * after specified intervals * * *. Also, in order for overtime to be recurring it must be the

2. The pertinent portions of 5 U.S.C. § 5545 (1976) provide:

"(c) The head of an agency, with the approval of the Civil Service Commission, may provide that—

\* \* \* \* \* \*

"(2) an employee in a position in which the hours of duty cannot be controlled administratively, and which requires substantial amounts of irregular, unscheduled, overtime duty with the employee generally being responsible for recognizing, without supervision, circumstances which require him to remain on duty, shall receive premium pay for this duty on an annual basis instead of premium pay provided by other provisions of this subchapter * * *."

3. For an employee whose basic pay is at a rate which exceeds the minimum rate of basic pay for GS–10, the overtime hourly rate of pay is an amount equal to one and one-half times the hourly rate of the minimum rate of basic pay for GS–10. 5 U.S.C. § 5542(a)(2) (1976).

4. Premium pay is determined as an appropriate percentage, not less than 10 percent nor more than 25 percent, of such part of the rate of basic pay for GS–10. 5 U.S.C. § 5545(c)(2) (1976).

5. See 5 U.S.C. § 5545(c)(2) and 5 C.F.R. § 550.161(b) (1978).

6. U. S. Secret Service Revised Guidelines for the Payment of Regularly Scheduled Overtime to Employees Earning Premium Pay (Sept. 17, 1974). See also revision of December 24, 1974. The earlier version of 5 U.S.C. § 5545(c)(2) was not materially different in its language insofar as the authority for the Guidelines is concerned.

same number of hours (i.e., two hours each day or four hours each Saturday). Otherwise, it is irregularly scheduled overtime work which is covered by the provisions for premium pay.

The determination that Sullivan is entitled to administratively uncontrollable overtime must be upheld unless (a) it clearly contradicts the terms or purpose of the statute or (b) clearly contradicts the implementing regulations promulgated by the Civil Service Commission.[7] Sullivan contends that the Secret Service's interpretation of "recurring" overtime is too restrictive; that the protection of Government officials is by its very nature "regularly" scheduled and "recurring"; and that his advance assignment to the Blumenthal detail, which was well planned and detailed, demonstrates that the overtime involved was administratively controllable. Plaintiff contends further that he had no control over or need to exercise his discretion to determine what overtime was necessary. It is not determinative of the latter issue that, in the course of this single visit of the Secretary, where the overtime for a relatively short period was directed, it was not in fact necessary for plaintiff to exercise his discretion to determine what overtime was necessary. Once assigned and performing in his role as the Secretary's protector, he had that discretion in the event the visit did not proceed as planned.

As to plaintiff's contention that the visit was well planned and detailed in advance, we are bound by and restate with approval our holding in *Burich*.[8] The distinction between administratively uncontrollable overtime and regularly scheduled overtime is not whether the overtime is anticipated, but rather whether it can be regulated. The assignment to protection of the Secretary for part of a single day did not meet the Service's definition, applicable to all assign-ments, of regularly scheduled overtime.[9] Although scheduling the protection of various Government officials is a "normal" activity of the Secret Service, in that it occurs frequently, it is not necessarily "regular" in the sense of *recurring* at uniform or stated intervals. The "two or more days in succession" and identity of period requirements are not unreasonable, are not inconsistent with the statute, and are applied generally. Since Sullivan's overtime on November 30, 1978, does not fall within that definition, but is covered by the provision for "irregularly scheduled overtime," his compensation by means of premium pay pursuant to the provisions of section 5545(c)(2) was proper, and his claim must fail.

### Potosky's Claim

Special Agent Potosky claims that he worked 88 hours of overtime in a 2-week pay period and that, although he received premium pay, such premium pay was limited by 5 U.S.C. § 5547,[10] and that, accordingly, he was not compensated for part of his overtime work during the period in question. Specifically, Potosky claims that the limitation imposed by section 5547 resulted in his being paid, for 88 hours of overtime, the same amount he could have earned by working only 45 hours of overtime; therefore, he claims he was required to work the hours in excess of 45 hours without being compensated therefor, in violation of the fifth and thirteenth amendments to the United States Constitution.

The flaw in Potosky's argument is that he is not paid pursuant to a single statute which provides an hourly rate for specific services performed; his entitlement to pay is derived from numerous statutes and regulations which must be read together. These statutes and regulations, *including* section 5547, provide a maximum compensa-

---

**7.** *Fox v. United States*, 416 F.Supp. 593 (E.D. Va.1976); *Fix v. United States*, 177 Ct.Cl. 369, 377, 368 F.2d 609, 614 (1966).

**8.** *Burich v. United States*, 177 Ct.Cl. 139, 145, 366 F.2d 984, 988 (1966), *cert. denied*, 389 U.S. 885, 88 S.Ct. 152, 19 L.Ed.2d 182 (1967).

**9.** See note 6, *supra*.

**10.** Section 5547 of 5 U.S.C. limits employees' aggregate pay for any pay period, including § 5545 and § 5542 overtime, to the maximum pay rate of a GS–15 employee.

tion for the position held by Potosky, which compensation he has received in full. Section 5547 does not deprive Potosky of any vested rights or otherwise take anything away from him.[11]

Plaintiffs' motion for summary judgment is denied. Defendant's cross-motion for summary judgment is granted, and the petition is dismissed.

---

11. See *Butler v. Pennsylvania*, 51 U.S. (10 How.) 402, 13 L.Ed. 472 (1850); *Fix v. United States, supra* note 7; *Urbina v. United States*, 192 Ct.Cl. 875, 428 F.2d 1280 (1970).