**Robert C. ALDRICH, et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. 92–430 C.**

United States Court of Federal Claims.

July 8, 1994.*

this motion, and reissue the Opinion for publication this date, July 27, 1994.

Ed Bethune, Searcy, AR, for plaintiffs.

Harold D. Lester, Jr., U.S. Dept. of Justice, Washington, DC, for defendant.

## OPINION

HODGES, Judge.

Plaintiff Robert C. Aldrich and 17 other Federal Bureau of Investigation Agents bring this suit to recover back pay for overtime worked during the rededication of the Statue of Liberty in 1986. Plaintiffs claim entitlement to compensation for officially ordered overtime pursuant to 5 U.S.C. § 5542(a) (1988). Defendant contends that FBI agents are compensated with annual premium pay instead, because such overtime is administratively uncontrollable. 5 U.S.C. § 5545(c)(2) (1988). Plaintiffs have produced no evidence that FBI Headquarters knew in advance that plaintiffs would be required to work extended hours. If FBI Headquarters did not have reason to know the extended hours, they could not schedule the overtime into the employee's regular administrative workweek pursuant to 5 C.F.R. § 610.111(a)

(1986). The burden of producing such evidence is on plaintiffs, and they have not met this burden. We grant defendant's cross-motion for summary judgment.

## FACTS

In 1985 the Federal Bureau of Investigation Director was informed by the FBI's New York Office that a rededication ceremony for the Statue of Liberty was scheduled from June 30 to July 7, 1986. The New York Office intended to provide some security for the event due to the possibility of terrorist activities and the large number of dignitaries expected.

Plaintiffs, who are members of a Special Weapons and Tactical Team, were assigned to teams with duty stations both on Liberty Island and Governor's Island. Plaintiffs furnished no evidence that the New York Office notified FBI Headquarters that the SWAT team would be working extended shifts.

The Statue of Liberty celebration went as planned. Plaintiffs worked their assigned duty from June 30 to July 6 and the operation terminated as intended at 10:30 A.M. on July 7, 1986.

One of the plaintiffs, Agent Kleber, requested overtime pay from the FBI approximately three years after the operation. This request was denied by the FBI Director. Each plaintiff states that he has requested general overtime pay from FBI Headquarters, and that none of the requests has been granted. Plaintiffs other than Mr. Kleber do not state when they made their requests for general overtime.

Although the evidence clearly establishes that FBI Headquarters was aware of the operation in advance, plaintiffs have not produced evidence that FBI Headquarters knew in advance that they would be assigned to work prolonged hours during their tour of duty. The FBI's document destruction policy requires that time and attendance records be destroyed after three years. Records of personnel assigned to the operation and the hours they worked do not now exist.

## DISCUSSION

### I

Defendant contends that plaintiffs had several appeals that could have been made through FBI Headquarters and thus have failed to exhaust administrative remedies. Defendant does not inform us what those appeals are or any regulation requiring that they be performed. The Federal Register suggests that the appeal process should be exhausted before resorting to a court. 48 Fed.Reg. 3931, 3933 (1983). Defendant urges that Title 5 of the Code of Federal Regulations implies a need to appeal *all* pay decisions prior to submitting claims for judicial review.

■ Congress did not mandate administrative appeals of premium pay decisions. *See* 5 U.S.C. §§ 5541–5550a, Subchapter V–Premium Pay. We conclude that appeals associated with overtime premium pay under Subchapter V are permissive rather than mandatory.

> [Defendant] confuse[s] what Congress could be claimed to allow by implication with what Congress affirmatively has requested or required. By delegating authority, in the most general of terms, to [OPM], Congress cannot be said to have spoken to the particular issue whether [FBI agents in back pay cases] should have direct access to the federal courts.

*McCarthy v. Madigan*, —— U.S. ——, ——, 112 S.Ct. 1081, 1089, 117 L.Ed.2d 291 (1992).

■ "Where Congress specifically mandates [administrative remedies], exhaustion is required. But where Congress has not clearly required exhaustion, sound judicial discretion governs." *McCarthy*, at ——, 112 S.Ct. at 1086 (cites omitted). As a general rule, the court should not exercise jurisdiction when plaintiffs have not exhausted administrative remedies. The exception is that we should grant jurisdiction when plaintiffs' interests in a judicial action outweigh the Government's interest in administrative autonomy. *McCarthy*, at ——, 112 S.Ct. at 1087.

■ The Supreme Court of the United States has recognized three circumstances in

which the interests of the individual "weigh heavily against requiring administrative exhaustion": (1) undue prejudice to subsequent assertion of a court action; (2) administrative remedy is inadequate because the agency cannot grant relief; or (3) administrative remedy may be inadequate where the administrative body is shown to have predetermined the issue. *McCarthy*, at ——, 112 S.Ct. at 1087.

■ This case was brought eleven days prior to the end of the statute of limitations period. If we were to dismiss this case for administrative review, plaintiffs would be barred from seeking judicial review in the future. This would result in exceptional prejudice.

Plaintiffs' administrative appeal would be through FBI Headquarters. One of the plaintiffs requested general overtime pay from the FBI Director, who denied the request. To require the other plaintiffs to appeal for general overtime when the director has spoken on the issue would be a meaningless exercise. *McCarthy*, at ——, 112 S.Ct. at 1088 (citing *Houghton v. Schafer*, 392 U.S. 639, 640, 88 S.Ct. 2119, 2120, 20 L.Ed.2d 1319 (1968)) (where Attorney General determined that rules of the prison "validly and correctly applies to petitioner," requiring administrative review through a process culminating with the Attorney General "would be to demand a futile act."). Remanding this case to the FBI would be a futile exercise.

■ Defendant asserts laches as a defense to plaintiffs' claim. This defense is not generally allowed in actions for overtime pay. *Manning v. United States*, 10 Cl.Ct. 651, 656 (1986). This is true because in an action for overtime pay, defendant suffers no additional injury. *Albright v. United States*, 161 Ct.Cl. 356, 362–63, 1963 WL 8497 (1963).

■ Defendant states that it was prejudiced by the delay because FBI records of the event were destroyed pursuant to FBI document destruction regulations. Such regulations apparently require the destruction after three years of documents that contain information pertinent to actions which are subject to a six-year statute of limitations.

Thus, we are asked to allow the FBI's own record destruction policy to frustrate Congress' intent that plaintiffs have six years to bring pay actions in this court. Defendant has not shown special prejudice because of plaintiffs' delay, and its defense of laches must be denied.

■ Defendant must show that plaintiffs' delay in filing the suit was unreasonable and inexcusable, and that the delay prejudiced the defendant. *Pepper v. United States*, 8 Cl.Ct. 666, 672 (1985), *aff'd*, 794 F.2d 1571 (Fed.Cir.1986) (citing *Costello v. United States*, 365 U.S. 265, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961)). Assuming that plaintiffs did unreasonably delay in bringing the suit, defendant does not show why waiting the full statutory period prejudiced the Government more than waiting three years and one day. Equities must weigh heavily on defendant's side before the court may refuse to hear a case for delay less than the statutory period. *O'Brien v. United States*, 148 Ct.Cl. 1, 4, 1960 WL 8490 (1960).

## II

■ Congress authorizes overtime pay pursuant to 5 U.S.C. §§ 5542, 5545. Section 5542(a) authorizes compensation for general overtime officially ordered or approved, at time and one-half pay. If overtime hours cannot be controlled administratively, an employee receives annual premium pay pursuant to 5 U.S.C. 5545(c)(2). An employee who receives annual premium pay is excluded from all other forms of premium compensation, except for "regularly scheduled overtime, night, and Sunday duty, and holiday duty." 5 U.S.C. § 5548(c)(2). Thus, a position compensated with annual premium pay cannot receive general overtime unless the overtime is officially ordered or approved, and scheduled.

Congress delegated to OPM the authority to issue regulations for the administration of premium pay. 5 U.S.C. § 5545 (1988). *See Buchan v. United States*, 31 Fed.Cl. 496 (1994) for a discussion of OPM regulations as they relate to a similar fact situation.

If the overtime necessary for the particular function can be regulated, overtime is

compensated as general overtime pursuant to 5 U.S.C. § 5542(a). Plaintiffs argue that the agents were assigned specific hours of duty and that the schedule was definite. However, plaintiffs were assigned to security in anticipation of possible terrorist activity. They could have been called upon to work unanticipated and discretionary overtime due to contingencies that may have caused events not to proceed according to plan. *Sullivan v. United States,* 665 F.2d 1012, 1015, 229 Ct. Cl. 82 (1981). The fact that the celebration was well-planned and detailed in advance does not transform administratively uncontrollable overtime into controllable overtime. *Sullivan,* 665 F.2d at 1015. We conclude that the overtime associated with security in anticipation of possible terrorist activity is not administratively controllable.

FBI Headquarters did not authorize general overtime for plaintiff agents in this case. Thus, the issue is whether FBI Headquarters should have scheduled the overtime as part of the employee's regular administrative workweek. *Bennett v. United States,* 4 Cl. Ct. 330, 340–43 (1984) (citing *Aviles v. United States,* 151 Ct.Cl. 1, 1960 WL 8530 (1960)).

The fact that overtime is not scheduled may not be sufficient to deny a claim for premium pay. In *Aviles,* the Government would not schedule overtime because it was difficult to estimate, and because the assignments might end earlier than scheduled. The court ruled that the overtime should have been scheduled into the employees' regular administrative workweek. "The defendant could have formally scheduled workweeks or tours of duty which included the overtime which it *knew* would be required." *Aviles v. United States,* 151 Ct.Cl. 1, 8, 1960 WL 8530 (1960) (emphasis added). OPM guidelines reflect this decision in 5 C.F.R. § 610.121(b)(3).

FBI guidelines allow general overtime only if authorized in advance by FBI Headquarters and scheduled to recur on at least seven successive days. *MAOP* 8–2.1 at 97. Although the facts strongly suggest that the event was scheduled in advance to last seven successive days, plaintiffs have produced no evidence that FBI Headquarters had knowledge of the extended shifts that plaintiffs were working. One of the requirements of scheduling the work in advance is that the scheduling body must have some notice of the actual work requirements. 5 C.F.R. § 610.121(b)(2) (1986). Because plaintiffs have not presented evidence to establish a factual issue relating to the actual knowledge of FBI Headquarters, we must grant defendant's motion for summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986).

## CONCLUSION

For the foregoing reasons, defendant's cross-motion for summary judgment is GRANTED. Plaintiffs' motion for summary judgment is DENIED. The Clerk will dismiss plaintiffs' complaint. No costs.