CANE TENNESSEE, INC. and Colten, Inc., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 96–237 L.

United States Court of Federal Claims.

Sept. 30, 1999.

Charles F. Lettow, Washington, DC, for plaintiffs.

Marc A. Smith, with whom were Lois J. Schiffer, Assistant Attorney General, United States Department of Justice, Washington, DC, for defendant.

Daniel W. Kilduff, Office of the Solicitor, United States Department of the Interior, Washington, DC, of counsel.

*OPINION AND ORDER*

HEWITT, Judge.

This matter comes before the court on Defendant's Motion for Summary Judgment. Plaintiffs, Cane Tennessee, Inc. ("Cane") and Colten, Inc. ("Colten") own property in Bledsoe County, Tennessee. In their Complaint, plaintiffs assert a right to just compensation for a taking of their mineral interests and other property as a result of the government's refusal to grant mining permits to Cane's lessee, Eastern Minerals International, Inc. ("Eastern Minerals") and Colten's lessee, Van Buren Minerals Corporation ("Van Buren"). In its Motion for Summary Judgment, defendant raises three issues. First, defendant argues that plaintiffs' actions in prosecuting their claims warrant dismissal of their claims under laches. Second, defendant asserts that, because plaintiffs themselves never applied for a permit to mine, they cannot complain of any governmental action taken against them. Third, defendant asserts that plaintiffs' claims must fail because they are contractual in nature and do not involve property interests compensable under the takings clause of the Fifth Amendment. For the following reasons, defendant's motion is GRANTED as to Colten and DENIED as to Cane.

I. Background

The following statement of facts and issues regarding the present case is taken from Defendant's Proposed Findings of Uncontroverted Fact and Plaintiffs' Statement of Genuine Issues, as well as the decision in *Eastern Minerals Int'l, Inc. v. United States,* 168 F.3d 1322, 1998 WL 658275 (Fed.Cir.1998) (affirming the Court of Federal Claims' decision on February 21, 1997, denying Cane and Colten's motion to intervene in a case brought by Eastern Minerals and VanBuren arising out of the same facts and circumstances).

Cane and Colten are incorporated in the state of Delaware and owned by the same individual. Both companies bought the mineral interests at issue in this litigation from the Wyatt family. Cane purchased its property in February, 1979; Colten purchased its

property in October, 1979. Under the terms of both purchases the Wyatts retained a 3.5% royalty interest in any coal to be mined.

In February, 1979, Eastern Minerals, a corporation wholly owned by Milton Bernos, acquired a leasehold in the mineral interests owned by Cane. The lease granted Eastern the exclusive right to mine coal on the property. The lease provided for an initial term of twelve years·and granted Eastern Minerals the unilateral right to extend the lease for up to four additional ten-year periods. In order to extend the lease, Eastern Minerals was required to provide notice to Cane 180 days prior to the expiration of the term. Eastern Minerals never exercised its right to extend. The Eastern Minerals lease expired in February, 1991.

In October, 1979, Van Buren, also owned by Milton Bernos, acquired a leasehold in the mineral interests owned by Colten on terms substantially identical to the Cane lease to Eastern Minerals. Van Buren never provided notice to extend its lease. The Van Buren lease expired in October, 1991. By the terms of both lease agreements, the tenants (Eastern Minerals and VanBuren) were required to pay as rent the greater of a minimum rent or 3.5% of revenues.

In 1977 Congress enacted the Surface Mining Control and Reclamation Act, 30 U.S.C. §§ 1201–1328 (1988) ("SMCRA"), which required permits as a precondition to mining. In 1980 and 1981, Eastern Minerals obtained such permits and invested about $3,800,000 in the mining project. Due to a change in governmental policy, Eastern Minerals' application to renew its mining permit was denied in 1982. Eastern continued unsuccessfully to pursue a permit between 1982 and 1994. The United States Department of Interior, Office of Surface Mining ("OSM"), continuously delayed the application until it rendered a final decision on the merits of Eastern Minerals' permit application in 1994. As noted above, Eastern Minerals' lease expired in February, 1991.

In October, 1994, Eastern Minerals notified Cane of its intent to sue the United States to recover for the loss of its property rights and invited Cane to join the suit. Exhibits to Memorandum in Support of De-

fendant's Motion for Summary Judgment ("Defendant's Exhibits"), Vol. II at 256. On November 7, 1994, Cane replied to Eastern Minerals stating that "Cane Company Limited is not interested in joing [sic] with your suit against the Government." *Id.* at 257. On December 29, 1994, Eastern Minerals, Van Buren, Milton Bernos, and the Wyatts filed suit in this court (the "Eastern Minerals case"). *Eastern Minerals Int'l, Inc. v. United States,* No. 94–1098 L (Fed.Cl. filed Dec. 29, 1994).

On April 30, 1996, Cane and Colten filed a complaint in the present action. On October 2, 1996, the court issued an opinion in the Eastern Minerals case concluding that the government was liable to Eastern Minerals and to the Wyatts for a taking. *Eastern Minerals Int'l, Inc. v. United States,* 36 Fed. Cl. 541 (1996) (*"Eastern I"*). On November 25, 1997, the court awarded damages. *Eastern Minerals Int'l, Inc. v. United States,* 39 Fed.Cl. 621 (1997) (*"Eastern II"*). On October 10, 1996, eight days after the *Eastern I* decision on liability, Cane and Colten moved to consolidate this case with the *Eastern Minerals* case. The court denied Cane and Colten's consolidation motion on November 20, 1996.

Following the denial of their Motion to Consolidate, Cane and Colten moved to intervene in the *Eastern Minerals* case on November 20, 1996, alleging the government was liable to Cane and Colten for a taking. Cane and Colten based their motion for intervention upon the discovery of a transcription error in the lease between Cane and Eastern Minerals and asserted that Cane needed to protect its interests. The lease stated that the "Landlord" (Cane) was responsible for paying the 3.5% royalty to the Wyatts; but Cane asserted that the lease should read that the "Tenant" (Eastern) was·responsible for the payments. On January 22, 1997, Eastern Minerals filed Plaintiffs' Admission and Joint Motion to Supplement the Record in which Eastern Minerals made an admission that placed the responsibility for payment of the Wyatts' royalty on itself. The motion further stated that the admission was binding on plaintiffs in the Eastern Minerals case only.

Cane and Colten's Motion to Intervene in the *Eastern Minerals* case was denied by order of the court on February 21, 1997. The government filed its Motion for Summary Judgment ("Defendant's Motion") in this matter on June 20, 1997. Plaintiffs filed their Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Plaintiffs' Opposition") on July 28, 1997. The government filed a reply memorandum ("Defendant's Reply") on August 4, 1997. Oral argument was held on March 25, 1998 ("Trans.") and plaintiffs filed a Supplemental Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Plaintiffs' Supp.") on April 16, 1999. Defendant also filed a supplemental memorandum ("Defendant's Supp.") on April 30, 1999, and additional oral argument was heard on June 14, 1999 ("Supp. Trans.").[1]

## II. Discussion

Summary judgment is appropriate when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. *See RCFC* 56(c). *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Jay v. Secretary of Health and Human Servs.,* 998 F.2d 979, 982 (Fed.Cir.1993). A fact is material if it might significantly affect the outcome of the suit under governing law. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issues of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party demonstrates an absence of a genuine issue of material fact, the burden then shifts to the non-moving party to show that a genuine issue exists. *See Sweats Fashions, Inc. v. Pannill Knitting Co.,* 833 F.2d 1560, 1563 (Fed.Cir.1987). Alternatively, if the moving party can show there is an absence of evidence to support the non-moving party's case, the burden shifts to the non-moving party to proffer such evidence. *See Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. The court must resolve any doubts about factual issues

in favor of the party opposing summary judgment, *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.,* 755 F.2d 158, 163 (Fed.Cir. 1985), to whom the benefits of all favorable inferences and presumptions run. *See H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985). The fact that this is "a takings case does not affect the availability of summary judgment when appropriate to the circumstances." *Avenal v. United States,* 100 F.3d 933, 936 (Fed.Cir.1996).

The Fifth Amendment provides that "private property" shall not "be taken for public use, without just compensation." U.S. Const. amend. V. A constitutional taking can be found in the absence of a physical invasion when a government act denies the owner all "economically viable use of his land." *Agins v. City of Tiburon,* 447 U.S. 255, 260, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980). There is no bright line test in determining whether a government action results in a taking. *See Whitney Benefits, Inc. v. United States,* 18 Cl.Ct. 394, 399 (1989), *aff'd,* 926 F.2d 1169 (Fed.Cir.1991). When the nature of the government action does not constitute a physical taking of property but, rather, limits the use a property owner may make of his property, the classic analytical tool for assessing whether a taking has occurred is the three-part test developed by the Supreme Court in *Penn Central Transportation Co. v. City of New York,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). *See Eastern Enters. v. Apfel,* 524 U.S. 498, 118 S.Ct. 2131, 2135, 141 L.Ed.2d 451 (1998); *Avenal,* 100 F.3d at 937–38. The test provides for consideration of the character of the governmental action, the economic impact on the claimant, and the extent to which the governmental action has interfered with distinct investment-backed expectations. *See Penn Central,* 438 U.S. at 124, 98 S.Ct. 2646; *Connolly v. Pension Benefit Guar. Corp.,* 475 U.S. 211, 212, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986); *Avenal,* 100 F.3d at 938. However, before a court may apply *Penn Central*'s three-part test, the court must determine whether a plaintiff's interest is a compensa-

---

1. This case was transferred from Judge Hodges to Judge Hewitt on January 27, 1999.

ble property interest within the meaning of the Fifth Amendment. *See M & J Coal Co. v. United States*, 47 F.3d 1148, 1153–54 (Fed. Cir.1995); *Skip Kirchdorfer, Inc. v. United States*, 6 F.3d 1573, 1580 (Fed.Cir.1993); *Avenal v. United States*, 33 Fed.Cl. 778, 784–85 (1995), *aff'd*, 100 F.3d 933 (1996).

### A. Colten's Interest

 The government asserts that Colten's claims should be denied because Colten did not submit a permit to mine. Defendant's Motion at 28. The court agrees. Because the SMCRA requires a permit to mine, a taking claim does not arise until after a permit has been sought and subsequently denied. *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 126–27, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985); *Southern Pacific v. City of Los Angeles*, 922 F.2d 498, 504 (9th Cir.1990); *Conant v. United States*, 12 Cl.Ct. 689, 691 (1987). In order to satisfy this administrative requirement, either Van Buren or Colten needed to submit an application to mine under the SMCRA.

Colten never submitted an application for a permit to mine. Defendant's Exhibits, Vol. I, at 78. Based upon the terms of its contract with Van Buren, Colten did not have the right to apply for a mining permit. Defendant's Exhibits, Vol. II at 181. Section 2(a)(i) of Colten's lease conveys to Van Buren "all mining rights and privileges owned by Landlord appurtenant to the Leased Minerals, and incident to ownership thereof." *Id.* Plaintiffs admit that Van Buren never filed an application for a permit to mine. Supp. Trans. at 18. Because Colten fails to satisfy this threshold requirement, the court determines that Colten's claim is not ripe.[2]

### B. Cane's Interest [3]

Although the parties agree that Cane held a property interest which was affected by the government's action under the SMCRA, they disagree about whether that property interest was compensable for Fifth Amendment purposes. Defendant asserts that the affected interest is purely contractual in nature and that frustration of contractual expectations does not entitle Cane to a remedy under the takings clause of the Fifth Amendment. At most, argues defendant, Cane is entitled to incidental or consequential damages under its contract with Eastern Minerals. Defendant's Motion at 31. Plaintiff contends that "Cane and Colten are seeking just compensation as *property owners* whose *mineral estates* have been taken." Plaintiffs' Opposition at 37 (emphasis added). Plaintiff also asserts that defendant's framing of the issue fails to address Tennessee law that "specifies the incidents of ownership of the minerals and negates any claim that Cane had mere 'contractual expectations.'" Plaintiffs' Supp. at 4.

### 1. Did Cane Have a Compensable Property Interest?

 The court must first determine whether plaintiff possessed a compensable property interest. *See M & J Coal Co. v. United States*, 47 F.3d 1148, 1153–54 (Fed. Cir.1995); *Skip Kirchdorfer, Inc. v. United States*, 6 F.3d 1573, 1580 (Fed.Cir.1993); *Avenal*, 33 Fed.Cl. at 784–85. Plaintiff asserts and defendant agrees that plaintiff's interest as a lessor of the land was a property interest. Defendant's Motion at 2; Defendant's Reply at 2; Defendant's Supp.Memo at 5–6. However, the parties dispute the nature of the property interest. Plaintiff asserts that its interest was a royalty interest, and therefore, an ownership interest in the minerals under Tennessee law. Plaintiffs' Supp. at 5–7. Defendant contends that

---

**2.** In *Eastern I* the court dismissed Van Buren's claims as unripe because Van Buren had never applied for a permit to mine. *Eastern Minerals*, 36 Fed.Cl. at 547–48. The court stated, "Although Van Buren may have faced the same delay Eastern endured, this is the sort of speculation that the ripeness doctrine seeks to avoid.... Each plaintiff must satisfy the threshold requirement of a single meaningful application to maintain the futility exception.... Van Buren's claim is not ripe." *Id.* at 548 (citations omitted).

The court agrees with the court's determination in *Eastern I*. For the same reasons the court denied Van Buren's claim, we now dismiss Colten's claims as unripe.

**3.** Since the court has determined that Colten does not have a valid claim for a taking, "plaintiff" and "Cane" will, unless otherwise noted, be used interchangeably throughout the rest of the opinion to refer to Cane's interest only.

plaintiff's interest, as evidenced by the terms of the contract between Eastern Minerals and Cane, was merely a contractual right to receive rent. Defendant's Reply at 17.

In *Phillips v. Washington Legal Foundation,* 524 U.S. 156, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998), the Supreme Court stated that "[b]ecause the Constitution protects rather than creates property interests, the existence of a property interest is determined by reference to 'existing rules or understandings that stem from an independent source such as state law.'" *Phillips,* 524 U.S. at 164, 118 S.Ct. 1925 (quoting *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). Under Tennessee law, the lease establishes the respective rights and duties of Cane and Eastern Minerals, as landlord and tenant. *See Cain Partnership, Ltd. v. Pioneer Inv. Servs., Co.,* 914 S.W.2d 452, 455 (Tenn.1996). In order to determine the type of property interest at issue, it is first necessary to look to Cane's lease agreement with Eastern Minerals. *See Phillips,* 524 U.S. at 164, 118 S.Ct. 1925; *United States v. Causby,* 328 U.S. 256, 266, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946).

Of particular importance to a determination of whether Cane had a property interest in the minerals is the distinction made by the Tennessee courts between leases of mining property and absolute sales of minerals.[4] *Carl Clear Coal Corp. v. Huddleston,* 850 S.W.2d 140, 145 (Tenn.Ct.App.1992); *Weatherly v. American Agric. Chem. Co.,* 16 Tenn. App. 613, 65 S.W.2d 592, 596 (1933). An absolute sale severs the title to the realty, while a lease does not. *See Weatherly,* 65 S.W.2d at 596. A severance of title can create a royalty interest in the seller. Tennessee law views the royalty interest as a corporeal property interest. *See J.M. Huber Corp. v. Square Enters. Inc.,* 645 S.W.2d 410, 412 (Tenn.App.1982). The fact that the agreement between Cane and Eastern Minerals is styled as a "lease" is not determinative of the issue. *See Weatherly,* 65 S.W.2d at 596 (discussing other factors aside from

the parties' designation of the instrument as a lease). The court must look to the intent of the parties to the lease as shown by the entire transaction. *See id.* at 597 (citing *Knoxville, C.G. & L.R. Co. v. Beeler,* 90 Tenn. 548, 18 S.W. 391, 392 (1891)). For instance, the conveyance of a mining right which allows the tenant to extract "every particle of the mineral" does not automatically render an agreement a sale. *Weatherly,* 65 S.W.2d at 596 (citing *Chandler v. French,* 73 W.Va. 658, 81 S.E. 825, 827 (1914)). The particular nature of the business of the tenant may also be indicative of the parties' intent. *See Carl Clear Coal,* 850 S.W.2d at 145 (citing *Crown Enters., Inc. v. Woods,* 557 S.W.2d 491, 493 (Tenn.1977)), which held that, because the taxpayer's sole purpose was to acquire coal for resale, its leases were sales contracts for tax purposes). The length of the lease term may also be instructive. *See Weatherly,* 65 S.W.2d at 599.

The provisions of the lease agreement between plaintiff and Eastern Minerals contain some elements that indicate plaintiff's and Eastern Minerals' intent to sell the minerals and other elements that indicate that a lease was intended. In particular, the conveyance of the minerals themselves, in addition to all mining rights and privileges under section 2(a) indicates that the parties to the contract intended a sale of the minerals, while the limitation of the lease to a specific term of years under section 4 may evidence an intent to form a lease. Defendant's Exhibits, Vol. II at 115; 9–10.

Although the proper resolution of the issue is far from crystal clear, several aspects of the parties' agreement lead the court to conclude that, under Tennessee law, the lease should be interpreted as a sale of the minerals. The conveyance in the lease is not limited merely to mining rights. Lease section 2(a) conveys *"all coal and other minerals located in the Land,"* as well as "all mining rights and privileges." Defendant's Exhibits, Vol. II at 115–16 (emphasis added). *See generally Carl Clear Coal,* 850 S.W.2d at 145–146 (discussing the relationship shared

---

4. A sale of the minerals, together with a retained royalty interest, results in a "property interest" under Tennessee law that appears to the court to

be a compensable property interest for takings purposes.

by parties to a mining lease). Furthermore, Cane's business activities were limited to "[i]nvestments in mining property." Defendant's Exhibits, Vol. I at 70–71 (plaintiff's response to defendant's interrogatory asking plaintiff to identify "[a]ll types of business activity undertaken"). *See generally Carl Clear Coal*, 850 S.W.2d at 145 (stating that the determination whether a lease can be construed as a lease or a contract for sale depends upon the particular nature of the business of relevant party). A royalty interest is more obviously a type of "[i]nvestmen[t] in mining property" than is a contract to receive rent. While the lease contained a definite term of years (albeit a long term), another lease provision, section 8(a) states that "[t]enant shall ... prosecute mining operations until all of the minable and merchantable coal ... in the Land has been mined and removed...." Defendant's Exhibit, Vol. II at 126. Section 8(a) casts all mining responsibility on Eastern Minerals, as would be consistent with ownership.

Because the court determines that plaintiff actually sold the minerals to its "tenant," Eastern Minerals, it might appear that plaintiff no longer possessed a compensable property interest in the subject minerals. However, under Tennessee law, the court must look to the financial terms in the lease to determine the effect Eastern Minerals' obligation to pay "rent" under section 5 had on Cane's interest in the minerals. *See generally Carl Clear Coal*, 850 S.W.2d at 146–47 (citing *Logan Coal & Timber Ass'n v. Helvering*, 122 F.2d 848 (3rd Cir.1941) (examining mineral leases in the context of a federal tax statute)). Plaintiff cites several cases which explain the common law principles embraced by the Tennessee courts relating to the property interest of the landlord under a mineral "lease." Plaintiff's Supp. at 5. Plaintiff asserts that "Tennessee case law and industry practice illustrate [that] a minimum rent provision in a mineral lease is supplementary to a royalty and is itself a royalty." *Id.* at 6. We now examine the authorities for this point.

In *Weatherly*, the Tennessee Court of Appeals stated that "[i]t is usual for mining leases ... in reserving a royalty to the les-

sor, to contain a provision for the payment to the lessor of a sum variously known as a 'minimum royalty' or a 'dead' or 'sleeping' rent, that is, to fix a minimum amount to be mined or a minimum royalty to be paid in any event within certain fixed periods.... The exact obligation and rights of the lessee under such a provision depend upon the terms of the particular lease and supplemental agreements." *Weatherly*, 65 S.W.2d at 598–99. Tennessee courts have also stated that the rent paid on a mineral estate is called royalty. *See J.M. Huber Corp. v. Square Enters. Inc.*, 645 S.W.2d at 412 (citing H. Williams, R. Maxwell and C. Meyers, *Oil and Gas*, 540–45 (1979)). Under Tennessee law, "the right to receive royalty is corporeal and constitutes an interest in the underlying mineral estate." *Huber*, 645 S.W.2d at 413. "[T]he conveyance of the rent, profits or income from land is equivalent to a conveyance of the land itself." *Id.* (citing *Mays v. Beech*, 114 Tenn. 544, 86 S.W. 713 (1905); *Johnson v. Johnson*, 92 Tenn. 559, 23 S.W. 114 (1893); *Davis v. Williams*, 85 Tenn. 646, 4 S.W. 8 (1887)).

Cane did not lose all of its ownership interest when it leased the minerals to Eastern Minerals. Tennessee law provides that Cane's so-called rent constituted a type of corporeal property interest—a royalty interest. The court finds that, as a royalty, Cane's property interest is a compensable interest for Fifth Amendment takings purposes. The court must now examine whether that interest was taken.

2. Was a Compensable Property Interest Taken?

The parties dispute whether plaintiff's property was "taken." Defendant asserts that "[a]s a matter of law ... defendant's lawful actions directed at a third party—Eastern Minerals—simply could not have taken plaintiffs' contractual expectations to receive rents under the Cane and Colten leases." Defendant's Motion at 31. In other words, defendant contends that actions taken by the government in denying a permit to Eastern Minerals had a mere incidental impact on Cane, and therefore are non-compensable under the Fifth Amendment. Plaintiff

states that "the government has not simply upset a contractual arrangement between Cane and Colten and Eastern and Van Buren, respectively, it has taken the right to mine the coal itself." Plaintiff's Opposition at 37.

In its First Amended Complaint, Cane claims relief under three counts. The first alleges, among other things, that "[b]y engaging in excessive and unreasonable delays and employing procedural tactics which deprived Eastern of the use and enjoyment of its leasehold interest, thus extinguishing [plaintiff's] royalty interests, the United States has effected a taking of [plaintiff's] royalty interests for which [plaintiff] must be paid just compensation." Complaint at 22. The second count states that "[b]y preventing mining of [plaintiff's] properties, the United States has effected a taking of [plaintiff's] mineral estates...." *Id.* at 23. Plaintiff's third count addresses improvements made on the property for the purpose of supporting mining operations. The third count asserts that "[o]wnership of the property improvements is vested in Cane as a matter of Tennessee law" and "[b]y preventing the mining of the Cane property, the United States has effected a taking of the property improvements built and constructed to support mining, for which Cane must be paid just compensation." *Id.* at 24–25.

In order to recover under the Fifth Amendment in this court, a plaintiff must demonstrate that the government took his property interest without justly compensating him. *See Murray v. United States,* 817 F.2d 1580, 1583 (Fed.Cir.1987). In *Penn Central Transportation Co. v. City of New York,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), the Supreme Court has put forth a three-part test the Federal Circuit applies to evaluate whether regulatory actions constitute a taking. *See Avenal v. United States,* 100 F.3d 933, 936 (Fed.Cir.1996). The *Penn Central* test provides for consideration of the character of the governmental action, the economic impact on the claimant, and the extent to which the governmental action has interfered with distinct investment-backed expectations. *See Penn Central,* 438 U.S. at 124, 98 S.Ct. 2646. *See also*

*Connolly v. Pension Benefit Guar. Corp.,* 475 U.S. 211, 212, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986); *Avenal,* 100 F.3d at 938. In neither their pleadings nor at oral argument in this matter did the parties address all three prongs of the *Penn Central* test. The parties focused instead on whether or not the government's actions had more than an "incidental impact" on plaintiff's interest. It would be inappropriate for the court to apply the *Penn Central* test at this point. The court will, however, consider the government's assertion that the government's actions had no more than an incidental impact on plaintiff's interest.

In support of its contention that plaintiff's interest in the property was merely incidentally impacted, defendant cites *Omnia Commercial Co. v. United States,* 261 U.S. 502, 43 S.Ct. 437, 67 L.Ed. 773 (1923) and *767 Third Avenue Associates v. United States,* 48 F.3d 1575 (Fed.Cir.1995). Omnia was a buyer of steel under a very favorable contract. Before any steel was delivered to Omnia, the United States government requisitioned the selling company's steel plate and ordered the selling company not to comply with its contract with Omnia. *Omnia,* 261 U.S. at 507, 43 S.Ct. 437. Omnia brought a suit alleging that "by the orders of the government the performance of the contract by the steel company had been rendered unlawful and impossible; that the effect was to take for the public use appellant's right of priority to the steel plate expected to be produced by the steel company and thereby appropriate for public use appellant's property in the contract." *Id.* at 507–08, 43 S.Ct. 437. The Supreme Court determined that under the circumstances of the requisition the government dealt only with the steel company, and that its actions were lawful. *Id.* at 511, 43 S.Ct. 437. The contract was ended because it was impossible for the steel company to deliver its product to Omnia. *Id.* Essentially, the Supreme Court found the government's actions to be a lawful exercise of power. The government did not intend to—and did not—take Omnia's property interest. *See id.*

In *767 Third Avenue Associates,* Sage Realty Corp. entered into leases with organiza-

tions from the Socialist Federal Republic of Yugoslavia ("SFRY"). *767 Third Ave. Assoc.*, 48 F.3d at 1576. Shortly after the leases were extended, war erupted in the SFRY and the United States formally acknowledged that the SFRY ceased to exist. *Id.* at 1577. Subsequently, President Bush issued an Executive Order which "blocked" the properties of SFRY organizations in the United States, including the properties leased from Sage. *Id.* (citing Exec. Order No. 12,808, 57 Fed.Reg. 23,299 (1992)). Treasury agents inspected the premises and posted notices denying access for a short period of time. *767 Third Ave. Assoc.*, 48 F.3d at 1577–78. Sage brought a suit alleging a taking of its property interests. The Federal Circuit determined that the government did not take Sage's property interest when it blocked the SFRY's properties. *Id.* at 1582. The SFRY had a continuing obligation to pay rent. *Id.* Furthermore, the government was not liable to Sage for a per se taking of the property.[5] The court stated that Sage was allowed access to the building the one time it made such a request. *Id.* at 1583. In addition, since the SFRY organizations had terminated their leases, Sage could have requested to make other uses of the offices. *Id.* at 1584.

In section II.B.1 of this opinion, the court determined that plaintiff's interest in the subject minerals was a royalty interest and, therefore, a "real property interest in the mineral estate." *See J.M. Huber Corp.*, 645 S.W.2d at 413. *See also Eastern Minerals*, 36 Fed.Cl. at 549. The government's reliance on *Omnia* and *767 Third Avenue Associates* is misplaced. The courts in those cases focused on the effect of the government's action on the parties' unperformed contractual obligations. The rule that "no interest is taken when a contract expectation is merely frustrated by a regulation directed toward a different party or property interest" does not apply to Cane's claim. *767 Third Ave. Assoc.*, 48 F.3d at 1582. When the government denied the mining permit to Eastern Minerals, it denied a permit with respect to the property in which Cane holds

a royalty interest, itself a compensable property interest. We do not now decide that the government's action constituted a taking under the three-part *Penn Central* test. We do, however, decide that the possibility is not foreclosed under the authority of either *Omnia* or *767 Third Avenue Associates.*

### 3. Laches

Under the statute of limitations of this court, a claim for just compensation must be instituted within six years from the alleged date of taking. *See* 28 U.S.C. § 2501 (1994); *Aaron v. United States*, 160 Ct.Cl. 295, 298, 311 F.2d 798 (1963). Although defendant does not challenge the court's jurisdiction in this matter under the statute of limitations, defendant does assert laches as an affirmative defense to plaintiff's takings claim. Defendant contends that it has suffered and will continue to incur both economic and evidentiary harms as a result of Cane's delay in filing suit. Defendant's Motion at 20–21. Furthermore, defendant alleges that "plaintiffs have attempted to take advantage of the judicial system by delaying their lawsuit until after defendant has exposed its entire case in related litigation." *Id.* at 22. Plaintiff asserts that laches does not bar its actions because it brought suit within the statute of limitations. Plaintiff's Opposition at 26. Plaintiff also states that it, rather than the government, has suffered prejudice by the government's failure to give plaintiff notice of the *Eastern Minerals* suit. *Id.* at 25–26, 31.

Whether to apply laches is a matter within the discretion of the court. *See A.C. Aukerman Co. v. R.L Chaides Constr. Co.*, 960 F.2d 1020, 1032 (Fed.Cir.1992); *O'Brien v. United States*, 148 Ct.Cl. 1, 1960 WL 8490, *4 (1960). It is a "flexible concept based on fairness." *O'Brien*, 148 Ct.Cl. 1, 1960 WL 8490, at *4. Unlike a statute of limitations, "laches is an equitable doctrine that must be considered in light of the facts of each case." *Cornetta v. United States*, 851 F.2d 1372, 1379 (Fed.Cir.1988) (en banc); *Bott v. Four Star Corp.*, 807 F.2d 1567, 1576 (Fed.Cir.

---

**5.** A per se taking occurs when the governmental action is "of such a unique character that it is a taking without regard to other factors that a

court might ordinarily examine." *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 432, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982).

1986). Laches is also an affirmative defense. *See Cornetta*, 851 F.2d at 1380. Therefore, the burden of proving a laches claim lies with the government. *Id.* In order to prove laches, the government must show undue delay by the plaintiff that resulted in prejudice to the defendant. *See Warren v. United States*, 4 Cl.Ct. 552, 557 (1984), *aff'd*, 746 F.2d 1489 (Fed.Cir.1984).

In regard to the undue delay prong of the laches test, defendant believes that the timing of the filing of plaintiff's Complaint was based upon events occurring in the litigation of the *Eastern Minerals* case. Defendant states that Cane filed its Complaint "more than sixteen months after Eastern Minerals brought suit, and nearly six years from the alleged date of taking." Defendant's Motion at 15. In its Complaint, plaintiff alleges that, due to the nature of the OSM's actions, it was not apparent to plaintiff or to Eastern Minerals until August 1990 that OSM would continually fail to issue a permit to mine to Eastern Minerals. Complaint at 18. Plaintiff also states that "[b]y 1993 Cane concluded it would not be possible to obtain permits to mine the land.... On May 28, 1993, [plaintiff and Eastern Minerals] entered into a written agreement confirming that the Cane Lease terminated on February 28, 1991." *Id.* at 19. Cane asserts that the "taking occurred on or about August 1, 1990, or, alternatively, on or about May 1993, or, still alternatively, at a date between August 1990 and May 1993." *Id.* at 22, 24, 25. Cane filed its Complaint in this matter on April 30, 1996.

In addition to plaintiff's failure to file suit on or about August 1, 1990, defendant states that plaintiff should have joined the plaintiffs in the *Eastern Minerals* case, who filed their Complaint on December 29, 1994. Defendant's Motion at 14. Trial in the *Eastern Minerals* case was held from February 26—March 1, 1996. Subsequently, plaintiffs attempted to intervene their case with the *Eastern Minerals* case on October 10, 1996. After its motion to consolidate was denied on November 20, 1996, plaintiff filed a motion to intervene on November 22, 1996. The motion to intervene was denied on February 21, 1997 in order to prevent prejudice to the

Eastern plaintiffs by delaying an award of damages.

▮ In order to satisfy the "undue delay" prong of the laches test, defendant must prove that "the plaintiff delayed in filing suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant...." *Aukerman*, 960 F.2d at 1032. The length of time which may be unreasonable depends upon the circumstances of each particular case. *Id.* (citing *Galliher v. Cadwell*, 145 U.S. 368, 373, 12 S.Ct. 873, 36 L.Ed. 738 (1892)). Delay in bringing a claim is insufficient on its own to sustain a laches claim. *See Warren*, 4 Cl.Ct. at 557. The Federal Circuit has stated that "[w]hen a limitation on the period for bringing suit has been set by statute, laches will generally not be invoked to shorten the statutory period." *Advanced Cardiovascular Sys., Inc.*, 988 F.2d 1157, 1161 (Fed.Cir.1993) (citing *Cornetta v. United States*, 851 F.2d at 1377–78). An exception to that general rule may still be made if there is sufficient prejudice to the government. *See Aldrich v. United States*, 31 Fed.Cl. 554, 557 (1994). The court now turns its attention to the prejudice prong of the laches test.

Defendant contends that before Cane filed its Complaint, Cane was privy to a complete "dress rehearsal" of the government's case through the *Eastern Minerals* case. Defendant's Motion at 20. Defendant states that it had to expend both time and expense in participating in depositions of individuals who were already deposed for the *Eastern Minerals* case. *Id.* Defendant contends that if plaintiff had been a party to the *Eastern Minerals* case, its depositions in that case would have focused on plaintiff's claims. *Id.* Plaintiff asserts that it is the one who has suffered prejudice because the government has had an opportunity to "dress rehearse" its case. Plaintiff's Opposition at 31. Plaintiff states that "[a]ny detriment suffered by the government is entirely attributable to its own failure to invoke RCFC 14 or 19 to give timely notice to [plaintiff] of the pendency of the *Eastern Minerals* action." *Id.*

▮ Prejudice may either be either economic or evidentiary. *See Aukerman*, 960 F.2d at 1033. Defendant may suffer

evidentiary prejudice if it is unable "to present a full and fair defense on the merits due to the loss of records, the death of a witness, or the unreliability of memories of long past events...." *Id.* "Prejudice may be shown by some indication that the government's defense has been hampered by the belated prosecution of the plaintiff's claim." *Warren,* 4 Cl.Ct. at 557. "Economic prejudice may arise where a defendant and possibly others will suffer the lost of monetary investments or incur damages which likely would have been prevented by earlier suit." *Aukerman,* 960 F.2d at 1033. "[E]conomic prejudice centers on consequences, primarily monetary, to the government should the claimant prevail." *Cornetta,* 851 F.2d at 1378.

 The court finds that the issues raised by the government in its affirmative defense based on laches do not lend themselves to summary disposition in this case. The government's laches claim raises genuine issues of material fact that are in dispute. For example, both parties here have made colorable allegations of prejudice and undue expense. *See* RCFC 56(c). *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Because the government has failed to meet its burden of showing an absence of a genuine issue of material fact on this issue, the court is unable to determine whether the government raises a legitimate defense at this point. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

III. Conclusion
1. Defendant's Motion for Summary Judgment is GRANTED as against Colten, Inc.
2. Defendant's Motion for Summary Judgment is DENIED as against Cane Tennessee, Inc.
3. On or before October 22, 1999, the parties shall file a joint status report setting forth a proposed schedule for further proceedings in this matter.

IT IS SO ORDERED.