CANE TENNESSEE, INC. and
Colten, Inc., Plaintiffs,

v.

UNITED STATES, Defendant.

Mary Anne Wyatt, Nancy Wyatt Zorn, and Wilson W. Wyatt, Jr., Both Individually and as Trustee for the 1973 Irrevocable Trust for the Primary Benefit of Mary Anne Wyatt, and the 1973 Irrevocable Trust for the Primary Benefit of Wilson W. Wyatt, Jr., and Regions Morgan Keegan Trust, F.S.B. as Trustee for the 1973 Irrevocable Trust for the Primary Benefit of Nancy Wyatt Zorn, Plaintiffs,

v.

The United States, Defendant.

Nos. 96–237–L, 00–513–L, 02–945–L.

United States Court of Federal Claims.

May 28, 2004.

Matthew D. Slater, Washington, DC, for plaintiffs.

Kristine S. Tardiff, with whom was Thomas L. Sansonetti, Assistant Attorney General, Environment & Natural Resources Division, United States Department of Justice, Washington, DC, for defendant. Daniel W. Kilduff, Office of the Solicitor, United States Department of the Interior, Washington, DC, of counsel.

## OPINION

HEWITT, Judge.

Before the court is Defendant's Motion for Summary Judgment and Memorandum in Support Thereof, filed on October 10, 2003 (Def.'s MSJ or defendant's motion) and The Wyatt Children[']s and the Trusts' Cross–Motion for Partial Summary Judgment and Memorandum in Support of Their Cross–Motion for Partial Summary Judgment and in Opposition to the Government's Motion for Summary Judgment, filed on December 15, 2003 (Pls.' Cross–Motion or plaintiffs' cross-motion).[1]

---

**1.** Additional filings relevant to the determination of this motion are Exhibits to Plaintiffs' Memorandum in Support of Their Motion for Partial Summary Judgment Respecting the Timing and Scope of Temporary and Permanent Takings of Plaintiffs' Coal Estates and Respecting the "Denominator" Applied to the Takings Analysis, filed on Mar. 29, 2002 (Pls.' Exs. 1–40 in Vols. I–III), Supplemental Exhibits to Plaintiffs' Opposition to Defendant's Cross–Motion for Partial Summary Judgment and Reply in Support of Plaintiffs' Motion for Partial Summary Judgment, filed on June 19, 2002 (Pls.' Exs. 41–47 in Vol. IV), Defendant's Appendix to Defendant's Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment and in Support of Its Cross–Motion for Partial Summary Judgment, filed on May 6, 2002 (Def.'s Exs. 1–40 in Vols. I–II), Defendant's Appendix to Its Motion for Summary Judgment as to the Claims of Plaintiffs Cane and Colten, and Its Memorandum in Support Thereof, filed on Dec. 20, 2002 (Def.'s Exs. 41–70 in Vol. III), Defendant's Supplemental Appendix to Its Motion for Summary Judgment as to the Claims of Plaintiffs Cane and Colten, filed on Feb. 28, 2003 (Def.'s Exs. 71–73 in Vol. IV), Plaintiffs' Appendix to Their Memorandum in Opposition to Defendant's Motion for Summary Judgment and in Support of Their Cross–Motion for Partial Summary Judgment, filed on Jan. 30, 2003 (Pls.' Exs. 48–59 in Vol. V), Appendix to Plaintiffs' Reply in Support of Their Cross–Motion for Partial Summary Judgment, filed on Mar. 14, 2003 (Pls.' Exs. 60–61 in Vol. VI), Defendant's Supplemental Appendix in Support of Its Motion for Summary Judgment, filed on Oct. 10, 2003 (Def.'s Exs. 74–88 in Vol. V), Appendix to Plaintiffs' Cross–Motion for Summary Judgment, filed on Dec. 15, 2003 (Pls.' Exs. 62–67 in Vol. VII), Defendant's Proposed Findings of Uncontroverted Fact, filed on Oct. 10, 2003 (Def.'s Facts), The Wyatt Children's and the Trusts' Response to Defendant's Proposed Findings of Uncontroverted Fact, filed on Dec. 15, 2003 (Pls.' Counter–Facts), The Wyatt Children's and the Trusts' Proposed Findings of Uncontroverted Fact, filed on Dec. 15, 2003 (Pls.' Facts), Defendant's Response to the Wyatt Children's and the Trusts' Proposed Findings of Uncontroverted Fact, filed on Jan. 21, 2004 (Def.'s Counter–Facts), Defendant's Response and Opposition to the Wyatt Plaintiffs' Cross–Motion for Partial

For the following reasons, Defendant's Motion for Summary Judgment is GRANTED as to the Wyatts and the Wyatt Trusts on the temporary takings issue, GRANTED as to the Wyatt Trusts on liability for a taking and DENIED as to the Wyatts on the relevant parcel issue and as to the Wyatts on the categorical takings issue under *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015–19, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) (*Lucas*). Plaintiffs' cross-motion is GRANTED as to the Wyatts on the relevant parcel issue and on the *Lucas* categorical takings issue and is otherwise DENIED.

## I. Background [2]

In two of the three complaints filed in this consolidated case, plaintiffs, the three Wyatt children (Wyatts) and the three trusts for their respective benefits (Wyatt Trusts), allege that the government permanently took their property without compensation when, on June 17, 2000, the Secretary of the Interior (Secretary) designated portions of their property as unsuitable for surface mining (Unsuitability Determination), and temporarily took their property without compensation during the unsuitability petition process. Complaint in Case No. 00–513 L, ¶¶ 2, 37–38, 40 (2000 Compl.) (alleging taking of Cane's and Colten's properties based on the Secretary's Unsuitability Determination); Complaint in Case No. 02–945 L, ¶¶ 2, 40–42, 44 (2002 Compl.) (alleging taking of Wyatts' and Wyatt Trusts' mineral royalty interests based on the Secretary's Unsuitability Determination); *see* Pls.' Ex. 3 at 34–35 (Unsuitability Determination). The earliest complaint alleges a taking based on the government's conduct during the Surface Mining Control and Reclamation Act (SMCRA) permitting process involving Cane's and Colten's lessees. Complaint in Case No. 96–237 L, at 1–2 (1996 Compl.).

At issue in the pending motions are certain mineral royalty interests of the Wyatts and the Wyatt Trusts. *See* Pls.' Cross–Motion *passim*. The Wyatts as individuals hold a 3.5% mineral royalty interest in the Main Tract, and the Wyatt Trusts own a 3.5% mineral royalty interest in the Rainey Ridge Tract and two other tracts that are affected by the Unsuitability Determination. 2002 Compl. ¶¶ 10, 28.

The Wyatts as individuals are Mary Anne Wyatt, Nancy Wyatt Zorn, and Wilson W. Wyatt, Jr., the children of the Wilson W. Wyatt, Sr. and Anne D. Wyatt (the Senior Wyatts). 2002 Compl. ¶ 4. These three individuals received their property interests for purposes of this case in 1991, when a reserved mineral royalty interest in the Main Tract of the Cane property was deeded to them in three equal shares by the Senior Wyatts. 2002 Compl. ¶ 28. These three individuals are also the beneficiaries of three

---

Summary Judgment, and Reply in Support of Defendant's Motion for Summary Judgment, filed on Jan. 21, 2004 (Def.'s Reply), Reply in Support of the Wyatt Children's and the Trusts' Cross–Motion for Partial Summary Judgment, filed on Feb. 13, 2004 (Pls.' Reply), and the Joint Response to the Court's Order Requesting Information, filed on Apr. 23, 2004 (Joint Response).

**2.** The facts contained in this section and in this opinion are only those pertinent to the relevant parcel and taking issues raised in the briefs. Facts cited to the pleadings of only one party do not appear to be in dispute. Additional facts in this matter can be found at *Wyatt v. United States*, 271 F.3d 1090 (Fed.Cir.2001) (*Wyatt*), rev'g *Eastern Minerals International, Inc. v. United States* (*Eastern Minerals*), 36 Fed.Cl. 541 (1996), as well as in this court's earlier opinions in *Cane Tennessee, Inc. and Colten, Inc. v. United States*, 44 Fed.Cl. 785 (1999) (*Cane I*), *Cane Tennessee, Inc. and Colten, Inc. v. United States*, 54 Fed.Cl. 100 (2002) (*Cane II*) and *Cane Tennessee,*

*Inc. v. United States*, 57 Fed.Cl. 115 (2003) (*Cane III*). The *Eastern Minerals* litigation was brought by Eastern Minerals, Inc. (Eastern Minerals) and Van Buren, Inc. (Van Buren), the lessees of plaintiffs Cane and Colten. *See Eastern Minerals*, 36 Fed.Cl. at 545. Initially, Cane Tennessee, Inc. (Cane) and Colten, Inc. (Colten) did not attempt to join the *Eastern Minerals* litigation, but rather filed their own action in this court on April 30, 1996, giving rise to Case No. 96–237 L. *See Cane I*, 44 Fed.Cl. at 788. After the trial court in *Eastern Minerals* found the United States liable for a taking to Eastern Minerals and to the Senior Wyatts (parents to the Wyatt children in this case, who held mineral royalty interests in the property leased to Eastern Minerals and Van Buren), Cane and Colten moved to consolidate the two cases. *Id.* That motion was denied on November 20, 1996, *see id.*, and the *Eastern Minerals* case and this case have been litigated on separate tracks. Case No. 96–237 L was transferred to this court on January 27, 1999. *Id.* at 789 n. 1.

trusts established by the Senior Wyatts in 1973. 2002 Compl. ¶ 5. Wilson W. Wyatt, Jr. was the original trustee of these trusts and remains the trustee, 2002 Compl. ¶ 5, except for the trust for the benefit of Nancy Wyatt Zorn, as to which the Regions Morgan Keegan Trust, F.S.B., has been substituted, *see* Order in Case No. 96–237 L, filed on Nov. 17, 2003 (acknowledging such substitution). The court has previously stated that "[t]he Wyatt Trusts *received* their property interests for purposes of this case in February, 1979 . . . ." *Cane Tenn., Inc. v. United States,* 57 Fed.Cl. 115, 117 n. 1 (2003) (*Cane III*) (emphasis added).[3]

This case has already been the subject of three summary judgment motions.[4] The second most recent motion, decided on October 2, 2002, is one of two opinions that addressed the 2000 complaint. *See Cane Tenn., Inc. and Colten, Inc. v. United States,* 54 Fed.Cl. 100 (2002) (*Cane II*). In its opinion, the court found that the "denominator" for purposes of the takings analysis was governed by the "parcel as a whole" rule. *Id.* at 105. In its decision on the third motion, *Cane III,* the court decided the relevant parcel issue as to the plaintiffs in the 2000 complaint. 57 Fed.Cl. at 120–22.[5] The court also held that because there was no extraordinary delay, the period of consideration by the Secretary of the Interior leading to the Unsuitability Determination did not constitute a temporary taking. *Id.* at 131–34; *see also Seiber v. United States,* 364 F.3d 1356, 1364–65 (Fed. Cir.2004) (stating the circumstances under which extraordinary delay is necessary for a temporary takings claim). In briefing on the pending motions and at oral argument, the parties acknowledge that the court's decision on the temporary takings issue in *Cane III* disposes of the parties' temporary takings claim under the law of the case doctrine. Transcript of Oral Argument on May 11, 2004 at 4–5(Tr.); Def.'s MSJ at 37–38; *see* Pls.' Cross–Motion at 1–2; *see also Augustine v. Principi,* 343 F.3d 1334, 1339 (Fed. Cir.2003) (stating that "[u]nder the doctrine of law of the case, 'a court will generally refuse to reopen or reconsider what has already been decided at an earlier stage of the litigation' " (quoting *Suel v. Sec'y of Health & Human Servs.,* 192 F.3d 981, 985 (Fed.Cir. 1999))).

Wilson W. Wyatt, Sr. and Anne D. Wyatt, his wife (the Senior Wyatts) bought large tracts of land from the heirs of John H. Imman in 1953. *Id.* at 119. The Senior Wyatts gradually sold and disposed of tracts and interests in tracts from 1953 to 1991. *Id.*

In 1977, Congress enacted the Surface Mining Control and Reclamation Act, 30 U.S.C. §§ 1201–1328 (2000) (SMCRA), which required permits as a precondition to mining and established a process whereby the Secretary could, upon petition, designate land as unsuitable for surface mining. *See E. Minerals Int'l, Inc. v. United States,* 36 Fed.Cl. 541, 544 (1996) (*Eastern Minerals*), *rev'd on other grounds, Wyatt v. United States,* 271 F.3d 1090 (Fed.Cir.2001) (*Wyatt*); 30 U.S.C.

---

**3.** As appears in Section II.C.3.a below, the court has determined that the Wyatt Trusts "received" the property interests relevant to their takings claim in this case in 1973 and 1974. The court should have pointed out, in *Cane III*, that the Wyatt Trusts "retained" their interests, rather than "received" them, in 1979. The term "received" in *Cane III*, 57 Fed.Cl. at 117 n. 1, is incorrect.

**4.** The first round of summary judgment briefing was filed under the 1996 complaint and involved an alleged taking based on the government's failure to grant plaintiffs Cane and Colten permits to mine on their land. *Cane I,* 44 Fed.Cl. at 787. The court held that Colten's claim of a taking was not ripe because neither it nor its lessee, Van Buren, had applied for a permit to mine. *Id.* at 790. The court denied summary judgment as to Cane because Cane's lessee, East-

ern did apply for a mining permit that was denied. *Id.* at 794. The court also denied summary judgment as to the Cane property on the affirmative defense of laches because defendant's motion raised genuine issues of material fact. *Id.* at 796. A subsequent decision by the Federal Circuit finding that Cane's lessee had not suffered a taking as a result of the government's failure to grant it a permit to mine on Cane's property effectively disposed of the takings claim in the 1996 complaint. *See generally Wyatt,* 271 F.3d 1090.

**5.** The court also granted in part plaintiffs' Motion for Reconsideration as to *Cane III.* The relevant parcel determination in *Cane III* was not disturbed by the court's reconsideration. *Cane Tenn., Inc. v. United States,* No. 96–237 L, slip op. at 2–4 (Fed.Cl. Oct. 3, 2003) (*Cane IV*).

§§ 1256 (requiring that a permit be obtained prior to engaging in surface coal mining operations), 1272 (process by which areas are designated unsuitable for surface coal mining operations).

In 1995, the United States Department of Interior, Office of Surface Mining (OSM) accepted and undertook consideration of a petition by Save Our Cumberland Mountains (SOCM), a concerned citizens group, to designate land encompassing and adjacent to plaintiffs' property as unsuitable for surface coal mining operations. 2002 Compl. ¶ 33; Pls.' Ex. 2 at 10. On June 17, 2000, the Secretary issued a letter of decision designating most of the petition area unsuitable for surface coal mining. 2002 Compl. ¶ 40. In 2002, the Wyatts and the Wyatt Trusts brought a takings claim arising out of the Unsuitability Determination. *See* 2002 Compl. ¶¶ 44, 47.

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is warranted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Rules of the United States Court of Federal Claims (RCFC) 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact that might significantly affect the outcome of the litigation is material. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Disputes over facts that are not outcome determinative will not preclude the entry of summary judgment. *Id.*

The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party demonstrates an absence of a genuine issue of material fact, the burden then shifts to the non-moving party to show that a genuine issue exists. *Sweats Fashions, Inc. v. Pannill Knitting Co.,* 833 F.2d 1560, 1562 (Fed.Cir.1987). The movant

is also entitled to summary judgment if the non-movant fails to make a showing sufficient to establish an element of its case on which it will bear the burden of proof at trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The court must resolve any doubts about factual issues in favor of the party opposing summary judgment, *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.,* 755 F.2d 158, 163 (Fed.Cir.1985), to whom the benefits of all favorable inferences and presumptions run. *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1574 (Fed.Cir.1984). The fact that this is a takings case "does not affect the availability of summary judgment when appropriate to the circumstances." *Avenal v. United States,* 100 F.3d 933, 936 (Fed.Cir. 1996).

### B. Relevant Parcel Determination

The threshold inquiry in any takings analysis is whether the takings plaintiff possesses a property interest compensable under the Fifth Amendment to the Constitution. *See Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency,* 535 U.S. 302, 321, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002) (*Tahoe*) (stating that payment of compensation is required under the Fifth Amendment whenever the government acquires private property for a public purpose); *Maritrans, Inc. v. United States,* 342 F.3d 1344, 1351 (Fed.Cir. 2003) (addressing the two-part test to evaluate takings claims: (1) determining first whether claimant has established a property interest for purposes of the Fifth Amendment, and (2) determining whether a taking occurred). All real estate property interests are compensable under the Fifth Amendment. *Cienega Gardens v. United States,* 331 F.3d 1319, 1329 (Fed.Cir.2003) (stating that " '[e]very sort of [real property] interest the citizen may possess' counts as a property interest under the Fifth Amendment" (quoting *United States v. Gen. Motors Corp.,* 323 U.S. 373, 378, 65 S.Ct. 357, 89 L.Ed. 311 (1945))). The property interests at issue here are non-participating royalty interests in minerals, particularly, coal.[6]

---

6. The Wyatts also own oil and gas rights, which were given to them by the Senior Wyatts in 1968, 1975 and 1976, in various properties in Tennes-

see, including the tracts at issue in this case. Def.'s Ex. 79 at 977–78; Def.'s Ex. 80 at 990. Defendant concedes, however, that these oil and

The United States Court of Claims observed that:

> A non-participating royalty may be defined as an interest in the gross production of oil, gas, and other minerals carved out of the mineral fee estate as a free royalty, which does not carry with it the right to participate in the execution of, the bonus payable for, or the delay rentals to accrue under, oil, gas, and mineral leases executed by the owner of the mineral fee estate.

*Fed. Land Bank of Houston v. United States*, 144 Ct.Cl. 173, 168 F.Supp. 788, 789 n. 1 (1958) (citation omitted). The owner of the mineral fee estate retains "[t]he exclusive leasing privilege ... commonly referred to as the executive right." *Welles v. Berry*, 434 So.2d 982, 984 (Fla.Dist.Ct.App.1983). Under Tennessee law, the property rights of the mineral fee estate owner and the non-participating royalty owner differ: [7]

> Executive rights include the powers to lease, to explore and to develop personally. Since the [non-participating royalty] owner does not have a voice in that regard, the [non-participating royalty] is sometimes called a "non-executive royalty."
>
> ... The only right reserved [in the non-participating royalty] is the right to receive royalty from the exploitation of the mineral estate.

*J.M. Huber Corp. v. Square Enters., Inc.*, 645 S.W.2d 410, 412 (Tenn.Ct.App.1982). In

Tennessee, a non-participating royalty interest is "classified as realty." *Id.* at 413. Therefore, a non-participating royalty interest in Tennessee is a real property interest compensable under the Fifth Amendment.

▮ In *Cane I*, the court determined, with respect to Cane Tennessee, Inc. and Colten, Inc., that a non-participating royalty interest was a property interest compensable under the Fifth Amendment. *Cane I*, 44 Fed.Cl. at 790–792; *see also Wyatt*, 271 F.3d at 1093 (recognizing the 3.5% coal royalty interest of the Senior Wyatts in the takings analysis). In this case, the Wyatts and the Wyatt Trusts also have non-participating royalty interests which are property interests compensable under the Fifth Amendment.

The court must next determine the specific parcel that has been taken. *Cane III*, 57 Fed.Cl. at 120. The relevant parcel becomes the denominator in the fraction that is used to show the economic impact of the government action. *See Cane II*, 54 Fed.Cl. at 105 (discussing the mechanics of the takings calculation). While the Supreme Court has never articulated a rigid formula for determining the relevant parcel, it has consistently used the "parcel as a whole" rule. *Tahoe*, 535 U.S. at 327, 122 S.Ct. 1465.

▮ In determining the "parcel as a whole," the focus is on the economic expectations of the claimant [8] with regard to the

---

gas rights were valueless "during the later time periods at issue in this case." Def.'s MSJ at 8 n. 2. The court does not discuss the oil and gas rights here, because these interests are irrelevant to the takings analysis in this case.

7. The owner of a non-participating royalty interest does not have the power to develop the mineral fee estate. When disputes arise between the executive rights holder and the non-participating royalty holder regarding the pace of development of the mineral estate, courts struggle with the nature and extent of obligations owed by the former to the latter. *See, e.g., Fed. Land Bank of Houston*, 168 F.Supp. at 790 (stating that "Texas law is not clear as to what rights the owner of a royalty interest has in these circumstances"); *Welles*, 434 So.2d at 985–88 (discussing court decisions finding or not finding an implied covenant by the executive rights holder to develop the mineral fee estate). This uncertainty complicates the valuation of the non-participating royalty interests. *Cf. Fed. Land Bank of Houston*, 168 F.Supp. at 792 (stating that the damages for the

loss of a time-limited non-participating royalty interest "should be measured by the amount of oil actually taken from the land in question").

8. Both defendant and plaintiffs in this case attempt to place the focus on third parties, rather than claimants, when advancing theories of the relevant parcel that support their arguments. *See* Def.'s MSJ at 21 (asserting that "the proper 'relevant parcel' ... is the entirety of property interests in Bledsoe County that were acquired from the *Senior Wyatts*" and describing property interests that are held separately by the *Wyatt Trusts* and the *Wyatts* as one parcel (emphasis added)); Pls.' Cross–Motion at 17 (suggesting that the "period-October 1995 to June 2000–properly defines the temporal scope of the Court's parcel analysis," when those dates mark actions by third parties, not plaintiffs in this case). Defendant's attempts to combine the interests of the Wyatts and the Wyatt Trusts are discussed *infra* in Section II.C.1, and plaintiffs' argument regarding the proper temporal focus of

property. *Forest Props., Inc. v. United States,* 177 F.3d 1360, 1365 (Fed.Cir.1999) (*Forest Properties*) (citing *Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 500–01, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987) (*Keystone*)). Accordingly, where a "developer treats legally separate parcels as a single economic unit, together they may constitute the relevant parcel." *Id.* (citing *Keystone,* 480 U.S. at 500–01, 107 S.Ct. 1232; *Naegele Outdoor Adver. v. City of Durham,* 844 F.2d 172, 176 (4th Cir.1988)). This is a factual inquiry, and the relevant considerations have been said to include

> the degree of contiguity, the dates of acquisition, the extent to which the parcel has been treated as a single unit, the extent to which the [regulated] lands enhance the value of remaining lands, and no doubt many others . . . .

*Ciampitti v. United States,* 22 Cl.Ct. 310, 318 (1991).[9] In addition, the Supreme Court has decided that a regulatory taking which takes all of the economic value of a parcel should be considered a categorical taking akin to a physical taking. *Lucas,* 505 U.S. at 1015–19, 112 S.Ct. 2886.

### C. The Relevant Parcel Issue Here

#### 1. The Wyatts' and Wyatt Trusts' Interests Should Not Be Aggregated

■ As an initial matter, the court addresses defendant's contention that the proper relevant parcel includes all of the property interests acquired by both the Wyatts and the Wyatt Trusts from the Senior Wyatts. Accordingly, the proper "relevant parcel" for the purposes of the [c]ourt's analysis in this case is the entirety of property interests in Bledsoe County that were acquired from the Senior Wyatts. This relevant parcel includes: (1) the approximately 1,680 acres in fee transferred to plaintiffs in 1973, (2) the approximately 900 acres in fee transferred to plaintiffs in 1974, and (3) the 3.5 % coal royalty interest transferred to plaintiffs in 1991.

Def.'s ꞏ MSJ at 21. The court disagrees. While it is true that plaintiffs acquired all of the property interests at issue in a series of donative transfers from the Senior Wyatts, the court believes that the relevant parcel analysis should be focused on the claimants. If the treatment of the separate parcels by the claimants indicates that the parcels were viewed "as a single economic unit, together they may constitute the relevant parcel." *Forest Properties,* 177 F.3d at 1365 (citing *Keystone,* 480 U.S. at 500–01, 107 S.Ct. 1232). The only evidence that the court can discern that the property interests owned by the Wyatts, on the one hand, and the Wyatt Trusts, on the other hand, were ever viewed by plaintiffs "as a single economic unit," *id.* at 1365, is the joint filing of this lawsuit which occurred, of course, after the events claimed to constitute takings in this case. The court simply does not see evidence that the treatment by the Wyatts and the Wyatt Trusts of their respective interests met any of the fact-based tests, *see, e.g., Ciampitti,* 22 Cl.Ct. at 318, that have been applied by courts when deciding that several legally distinct parcels should properly be aggregated into a parcel as a whole. One of the facts that indicates that these interests are distinct is the fact that the Wyatts' and the Wyatt

the takings analysis in this case is discussed *infra* in Section II.C.3.a of this opinion. The court believes that the intentions and motives most relevant to the takings analysis are those of the takings plaintiffs. *See Forest Properties,* 177 F.3d at 1365.

**9.** The court finds plaintiffs' summary of the purpose of the law of relevant parcel determination apt:

> The parcel-as-a-whole analysis reflected in the cases is intended to avoid a species of moral hazard, specifically to prevent a party from *artificially* separating the burdened property-whether by transfer of unburdened property in anticipation of or following regulatory action,

or perhaps even just analytically-so as to prove a total taking.

> [A] claimant's parcel of property could not first be divided into what was taken and what was left [behind] for the purpose of demonstrating the taking of the former to be complete and hence compensable. To the extent that any portion of property is taken, that portion is always taken in its entirety; the relevant question, however, is whether the property taken is all, or only a portion of the parcel in question.

*Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust,* 508 U.S. 602, 644, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993).

Pls.' Cross–Motion at 21.

Trusts' interests were acquired by plaintiffs nearly two decades apart. Pls.' Cross–Motion at 5 (describing acquisition by the Wyatt Trusts of Rainey Ridge Tract and Higgenbotham Ridge Tract in 1973 and Grape Knob Tract in 1974); *id.* at 6 (describing acquisition by Wyatts of interests in the Main Cane Tracts in 1991).

Another significant fact is that the Wyatts and the Wyatt Trusts are manifestly separate legal entities. *See* Def.'s Ex. 82 (establishing the 1973 Irrevocable Trust for the primary benefit of Nancy Wyatt Zorn); Def.'s Ex. 83 (establishing the 1973 Irrevocable Trust for the primary benefit of Wilson W. Wyatt, Jr.); Def.'s Ex. 84 (establishing the 1973 Irrevocable Trust for the primary benefit of Mary Anne Wyatt). The instruments establishing the Trusts confer upon the trustee (now trustees) numerous rights and powers associated with legal title. Def.'s Exs. 82–84. Defendant here does not question the validity of the Wyatt Trusts.

Trust beneficiaries of an express trust possess an equitable right to the corpus of the trust, but do not have legal ownership of the trust property. *See* 76 Am.Jur.2d *Trusts* § 49 n. 9 ("It is a fundamental essential of a trust that the legal estate be separated from the equitable estate or beneficial enjoyment."). While the Wyatts had legal ownership of their undivided 3.5% non-participating coal royalty interest in certain tracts in Bledsoe County, the Wyatts, as beneficiaries of the Wyatt Trusts, had only an equitable interest in the 3.5% non-participating coal royalty interests owned by the Wyatt Trusts in other tracts in Bledsoe County. The legal ownership of the Wyatt Trusts' 3.5% non-participating coal royalty interest resided in the trustee of the Wyatt Trusts at all relevant points in time for the takings claim in this case. *See* 76 Am.Jur.2d *Trusts* § 240 ("The trustee is that person in the trust transaction who holds the legal title to the property subject to the trust, for the benefit of the beneficiary ...."). The trustee of the Wyatt Trusts, at those times, was Wilson W. Wyatt, Jr.

Defendant has not cited any caselaw holding that property interests owned by an individual should be aggregated with equitable interests held by that same individual as a beneficiary of an express trust, for the purposes of determining a relevant parcel for a takings claim. It does not appear to the court that the Wyatts, as individual beneficiaries, were in a position to manage their interests in the Trusts or, indeed, to decide to bring suit in this court. The only cases which defendant cites to suggest that a beneficiary may act in its own name are not based, as here, on express trusts, but, as plaintiffs point out, on interests vested by equitable conversion:

> The doctrine of equitable conversion provides that a party who has entered into a land sale contract and satisfied all specified contingencies may bring a suit for specific performance should the seller renege, on the grounds that "equity regards things which are directed to be done as having actually been done where nothing has intervened which ought to prevent performance." 27A Am.Jur.2d Equitable Conversion § 1 (2003). In both *Forest Properties* and *Yaist,* the plaintiffs' land sale contracts were governed by the law of states that recognized equitable conversion as providing the buyer with a compensable property interest in the context of a taking. *See Forest Props., Inc. v. United States,* 39 Fed.Cl. 56, 70 (1997) (in California state law, exercise of an option contract conveyed equitable title to the devisee plaintiff), *aff'd,* 177 F.3d 1360 (Fed.Cir.1999); *Yaist v. United States,* [228 Ct.Cl. 281,] 656 F.2d 616, 622 (Ct.Cl.1981) (Florida state law provided that a contract for long-term sale of realty with payments to be made over time created an equitable conversion in favor of the purchaser). Neither plaintiff [in those cases] was a trust beneficiary.

Pls.' Reply at 6. The trustee (now trustees), not the beneficiaries, of the Wyatt Trusts sued in this court and rightly are the legal representatives of the Wyatt Trusts. *See Bank of United States v. Deveaux,* 9 U.S. (5 Cranch) 61, 91, 3 L.Ed. 38 (1809) ("A trustee is a real person capable of being a citizen or an alien, who has the whole legal estate in himself."), *overruled on other grounds by Louisville, C. & C.R. Co. v. Letson,* 43 U.S. 497, 2 How. 497, 11 L.Ed. 353 (1844).

Defendant's briefing argues that "it is not improper or unprecedented to combine the differing property interests of the Wyatt Children into a single relevant parcel," Def.'s Reply at 5, because the Wyatt Trusts' interests are " 'for the primary benefit' of each Wyatt child." Def.'s MSJ at 8 (quoting Def.'s Exs. 82–84 (trust documents)). It appears to the court that defendant is incorrectly attempting to merge the property interests of the Wyatts and the Wyatt Trusts. *Cf.* 76 Am.Jur.2d *Trusts* § 116 ("It is essential, in order to have a merger of the legal and equitable titles, rendering an attempted trust invalid, that the equitable interest of no other person than the holder of the legal title shall intervene, and that the legal and equitable estates be coextensive and commensurate—that is, the legal estate and the equitable estate are the same or the legal estate is at least as extensive as the equitable estate." (footnotes omitted)); *Horlick v. Sidley,* 241 Wis. 81, 98, 3 N.W.2d 710 (1942) (holding, when three children were joint trustees but whose interests as the three sole individual beneficiaries of the trust were "several" and thus "different," that no merger of interests destroyed the trust). Here, the Wyatt Trusts, evincing legal and equitable estates that are not "coextensive," [10] *see* 76 Am. Jur.2d *Trusts* § 116, are indeed co-plaintiffs with the Wyatts, but are separate and distinct property owners.

### 2. The Wyatts' Relevant Parcel

■ Having determined that the interests of the Wyatts and the Wyatt Trusts should be considered as constituting separate relevant parcels, the court finds that the determination of the relevant parcel with respect to the Wyatts is relatively straightforward. The Wyatts received undivided one-third interests in 3.5 % coal royalty interests in 1991 in the Main Tract and the Pilot Knob Tract. Def.'s Ex. 76 at 952, 959 (Deposition of Wilson W. Wyatt, Sr. (Wyatt Sr. Dep.) at 243, 315); Def.'s Ex. 81 at 1019–20 (Wyatt Pls.'

Resp. to Interrogs.). This royalty interest of the Wyatts was not contiguous to any other property of the Wyatts, Def.'s Ex. 81 at 1019–20 (Wyatt Pls.' Resp. to Interrogs.); Pls.' Ex. 63 at 1670 (map showing the Wyatts' interests in the Lantana Seam Reserves), was not acquired by the Wyatts with other property, Pls.' Facts ¶ 9, and was not part of a common development scheme of the Wyatts for coal development, *see* Def.'s Ex. 81 at 1019–20 (Wyatt Pls.' Resp. to Interrogs.) (showing that the only Tennessee property owned by the Wyatts that included coal property rights was the Main Tract and the Pilot Knob Tract); *compare Ciampitti,* 22 Cl.Ct. at 318 (listing some of the relevant considerations in determining whether several parcels should be considered a whole). The court therefore finds that the relevant parcel for the Wyatts is the undivided 3.5 % non-participating coal royalty interest acquired in 1991.

It is not contested in the briefing that the entirety of the mineral interests acquired by the Wyatts in 1991 was covered by the Secretary's Unsuitability Determination. Defendant argues that plaintiffs could seek a termination of that Determination and that coal mining on the affected tracts has not been "preclude[d]." Def.'s MSJ at 26 n. 14; *see also* 30 C.F.R. §§ 769.1–769.19 (2003) (setting out the petition process for "Termination of Previous Designations"). The court, however, agrees with plaintiffs that the existence of a petition process for termination of an unsuitability determination does not operate as a defense against a takings claim in this case. Pls.' Reply at 17 n. 9; *see* Def.'s MSJ at 26 n. 14 (presenting the possibility of petitioning for termination of the Unsuitability Determination as evidence that the coal royalty was not valued by the Wyatts, but not presenting this information to argue that the Unsuitability Determination did not constitute a final government action).

Defendant also argues that there is an exception to the *Lucas* categorical taking

---

**10.** Although the Wyatts are the primary beneficiaries of the trusts, the trust agreements create rights for persons to take each trust's corpus upon the death of the Wyatt who is the primary beneficiary of that trust. *See, e.g.,* Def.'s Ex. 82 at 1028–29 (§ 2(a)). Thus, even in the case of

Wilson W. Wyatt, Jr., his legal ownership of property interests, as trustee of the Wyatt Trust for his primary benefit, is not coextensive with his equitable ownership rights, as an individual beneficiary, in that trust's property.

rule applicable to the property interests in this case because the mineral interests had no value when received. Def.'s MSJ at 13, 23, 27, 33; Def.'s Ex. 76 at 952–53, 959 (Wyatt Sr. Dep. at 243–44, 315) (stating that the gift tax returns on the transfer of the 3.5% coal royalty interest to the Wyatts estimated the value of that interest to be zero). The issue of value of the property taken will be determined in further proceedings in this case. The court notes that non-participating coal royalties are not susceptible to valuation utilizing a valuation method that assumes the owner of the property interest participates in decision-making about the development of that particular property. *See supra* note 7 and accompanying text.

### 3. The Wyatt Trusts' Relevant Parcel

■ Defendant argues that the relevant parcel for the Wyatt Trusts should encompass "all of the lands originally acquired by [the Wyatts and the Wyatt Trusts] in Bledsoe County." Def.'s MSJ at 18. Having decided that the interests of the Wyatts and the Wyatt Trusts should be viewed separately, the court now considers what interests should be included within the relevant parcel for the Wyatt Trusts.

#### a. Common treatment

The Wyatt Trusts acquired some six tracts in Bledsoe County, Tennessee, receiving these tracts as gifts from the Senior Wyatts. *See* Pls.' Cross–Motion at 5; Def.'s Ex. 79 at 976–77. Five of these tracts, totaling approximately 1680 acres, were acquired on November 12, 1973: the Rainey Ridge Tract, the Higgenbotham Tract, the Penitentiary Gulf Tract, the Corner Point Tract, and the Basin Mountain Tract. Pls.' Facts ¶ 3; Def.'s Facts ¶ 11. The Grape Knob Tract, the sixth tract, about 900 acres in size, was given to the Wyatt Trusts by the Senior Wyatts on March 7, 1974. Pls.' Facts ¶ 4; Def.'s Facts ¶ 13. Defendant has conceded that other properties owned by the Wyatt Trusts outside of Bledsoe County should not be considered here by the court in determin-

ing the relevant parcel in this takings analysis. Def.'s MSJ at 18; Tr. at 9. Because the six tracts were acquired within four months of each other, the difference in the dates of these acquisitions appears to the court to be insignificant.

These six tracts are noncontiguous. *See* Pls.' Cross–Motion at 23 (stating that "[t]he Cane Tracts are noncontiguous"); Def.'s Reply at 13 (admitting a "lack of precise contiguity"). But contiguity is just one factor in the parcel-as-a-whole analysis, *see Ciampitti*, 22 Cl.Ct. at 318, and, in the history of the individual noncontiguous tracts in Tennessee once owned by the Senior Wyatts, not the determinative one. *See Wyatt*, 271 F.3d at 1093 (considering one takings claim for parcels "located in Bledsoe and Van Buren Counties is southeastern Tennessee"); *Cane III*, 57 Fed.Cl. at 122 (finding that Cane tracts "bought ... as a single property and ... treated ... as a single investment for the past 24 years" constituted the parcel-as-a-whole for a takings analysis); *see also Cane IV*, No. 96–237 L, slip op. at 3–4 (Fed. Cl. Oct. 3, 2003) (finding that two deeds of conveyance did not separate noncontiguous individual tracts for the parcel-as-a-whole inquiry of the takings analysis).

As donees, the Wyatt Trusts manifested a common development plan for some [11] of the six tracts in Bledsoe County. This common development scheme was focused on selling property interests in tracts which would be attractive to investors for coal production. First, in 1975, the Wyatt Trusts made an agreement with Milton Bernos to sell some portion of their land in Tennessee for coal development. Def.'s Facts ¶ 14; Def.'s Ex. 43 at 600 (Wyatt Sr. Dep. at 173); Def.'s Ex. 6 at 62 (Deposition of Milton J. Bernos, Jr. (Bernos Dep.) at 429–433). In 1978, this agreement was terminated, with the Wyatt Trusts retaining ownership of their land and also retaining $50,000 in installment payments from Mr. Bernos. Def.'s Ex. 86 (Termination and Cancellation of Agreement of Dec. 12, 1975 for Purchase by Bernos of Three Wyatt Trust Tracts in Bledsoe Coun-

---

11. The Wyatt Trusts sold two tracts in 1994 that were outside the area affected by the 2000 Unsuitability Determination. Pls.' Facts ¶¶ 6–7.

The sale of these tracts does not appear to be relevant to coal mining development.

ty, Tenn., dated Sept. 26, 1978). The termination agreement also fixed rights to 50,000 tons of coal on the Wyatt Trusts property. *Id.* Next, in 1979, the Wyatt Trusts sold three tracts in Bledsoe County to Cane Tennessee, Inc. for coal development, realizing $1,000,000 from the sale. Pls.' Counter–Facts ¶ 14; Def.'s Ex. 43 at 603–04 (Wyatt Sr. Dep. at 176–77).

The three parcels sold to Cane Tennessee, Inc. by the Wyatt Trusts were the Grape Knob Tract, the Rainey Ridge Tract and the Higgenbotham Tract, totaling approximately 2325 acres. Def.'s Facts ¶ 11; Def.'s Ex. 80 at 986 (Wyatt Pls.' Resp. to Def.'s Interrogs.). The Wyatt Trusts retained an undivided 3.5% nonparticipating royalty in the mineral fee estate in those three tracts. Def.'s Ex. 81 at 1020 (Wyatt Pls.' Supp. Resp. to Def.'s Interrogs.). Because the value of this nonparticipating royalty interest of the Wyatt Trusts in these three tracts is derived from the value of coal in the tracts, this property interest cannot be separated from the coal production common development scheme that the Wyatt Trusts had been pursuing since receiving these three tracts in 1973–74. The relevant parcel for the takings analysis for the Wyatt Trusts plaintiffs is, therefore, the Grape Knob Tract, the Rainey Ridge Tract and the Higgenbotham Tract, those tracts for which the Wyatt Trusts pursued coal development.

Plaintiffs argue, however, that "[t]he [r]elevant [p]arcel [s]hould [n]ot [i]nclude [p]roperty [s]old [b]efore [t]he [c]ommencement [o]f [t]he [u]nsuitability [d]esignation [p]rocess." Pls.' Reply at 7; Pls.' Cross–Motion at 15–19. This argument ignores the Federal Circuit's clear guidance that the relevant parcel determination should "focus on the economic expectations of the claimant with regard to the property." *Forest Properties,* 177 F.3d at 1365. Here, the indications of the economic expectations of the Wyatt Trusts are to be found in the coal development land transactions that the Trusts entered into in 1975, 1978 and 1979. To restrict the court's focus to "the period beginning with the unsuitability petition and continuing through the designation itself," Pls.' Reply at 8, would place the focus on the expectations of the Save Our Cumberland Mountains (SOCM) group which filed the petition in 1995, *see* Pls.' Facts ¶ 14 (recounting the receipt and acceptance of SOCM's petition by the government), and on the expectations of the Secretary of the Interior in 2000, *see* Pls.' Facts ¶ 14 (stating that the Unsuitability Determination "entirely prohibits the excavation of all minable coal on the Main Tract, the Pilot Knob tract, Rainey Ridge Tract, and the Higgenbotham Tract"). The expectations of third parties should not be the focus of the temporal aspect of the court's relevant parcel analysis.

Plaintiffs' reliance on various decisions by the Federal Circuit and by this court for "a more accepted method for resolving this temporal question" is misplaced. *See* Pls.' Reply at 8 (citing *Rith Energy, Inc. v. United States,* 247 F.3d 1355, 1362 (Fed.Cir.2001) and *Loveladies Harbor, Inc. v. United States,* 15 Cl.Ct. 381, 392 (1988)); *id.* at 9–12 (citing other decisions). The rule plaintiffs discern is that "the scope of the takings inquiry is defined by the timing and scope of the government actions from which the taking arises," *id.* at 8, but plaintiffs cite no authority for this formulation of the temporal aspect of a takings analysis. Certainly, in given fact situations, the time-frame of regulatory activities may indeed provide a relevant time period for a takings analysis. *See, e.g., Rith Energy,* 247 F.3d at 1362 (finding that an "appropriate" measure of "the regulatory burden" in that case was for the court "to look at the extent to which Rith was able to exploit its leases throughout the permitting period."). But, in other fact situations, including the development activities on the tracts at issue in this case reviewed by the court in *Cane II,* the temporal aspect of the relevant parcel determination has not been restricted to a regulatory activity time period. *See, e.g., Deltona Corp. v. United States,* 228 Ct.Cl. 476, 657 F.2d 1184, 1188, 1192 (1981) (finding that a 1964 master development plan was relevant to the takings analysis of permitting changes in the 1970s); *Cane II,* 54 Fed.Cl. at 106–08 (analyzing the effect of the 2000 Unsuitability Determination on Cane's fee simple interest in tracts acquired in 1979 and relying on documents contempo-

raneous with the acquisition for the expectations of Cane).

The court rejects plaintiffs' contention that the relevant parcel must be limited to interests held within the regulatory activity period that produced the government action effecting a diminution in value of the property interests of claimants. *See* Pls.' Reply at 7 ("Property sold decades before the Office of Surface Mining's ... acceptance of the unsuitability petition in 1995 should not be included in the relevant parcels for the claims here."). The court notes that plaintiffs' argument concerning the temporal aspect of the relevant parcel analysis is particularly inapposite given the facts of this case. Plaintiffs argue:

> A landowner's treatment of various properties frequently changes over time. Examining the time period actually influenced by the challenged government action gives a court a more realistic picture of how the landowner was treating the parcels at the time of the taking.

*Id.* at 9. At the time of the alleged taking in this case, the Wyatt Trusts had only a non-participating royalty interest in coal mined from the tracts in question. Pls.' Facts ¶ 17. Neither the owner of the mineral fee estate, nor any lessee, was mining coal during this period, Pls.' Cross–Motion at 8, and the Wyatt Trusts did not themselves possess an executive right to mine coal there. There is no "realistic picture" to be had from the 1995–2000 period as to the Wyatt Trusts' economic expectations for their property interest. A common development scheme for coal production from these three tracts expressed the Wyatts' "economic expectations," *Forest Properties*, 177 F.3d at 1365, and these expectations are the proper focus for the court's determination of the relevant parcel in this case. This determination also avoids the "moral hazard" identified by plaintiffs-that of "*artificially* separating the bur-

dened property ... to prove a total taking." Pls.' Cross–Motion at 21.

b. Diminution in Value Due to the 2000 Unsuitability Determination

The " 'value' of the 3.5% coal royalty interest owned by the Wyatt Trusts as of June 17, 2000 ... was $128,000," according to plaintiffs' expert. Def.'s Facts ¶ 38 (quoting February 2003 report by James W. Boyd). The court does not make a determination as to the accuracy of this figure but, consistent with the Federal Circuit's guidance that the court "resolve all doubt about factual issues in favor of the party opposing summary judgment," *Litton Indus. Prods.*, 755 F.2d at 163, the court adopts this figure for the sole purpose of analyzing the Wyatt Trusts' claim for a loss suffered due to the government action. When the relevant parcel was originally acquired by the Wyatt Trusts in 1973–74, it was valued at less than $105,250.[12] Def.'s Facts ¶¶ 12–13. The Wyatt Trusts received approximately[13] $1,050,000 from sales of property rights in the relevant parcel in the 1970s. Pls.' Counter–Facts ¶¶ 16, 20. Plaintiffs concede that the loss of $128,000 in value due to the 2000 Unsuitability Determination, when the relevant parcel as determined by the court has produced approximately $1,050,000 in income since it was acquired, would not meet the diminution in value requirement of either a categorical taking under *Lucas* or a taking analyzed under the multi-factor test of *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978) (*Penn Central*). Tr. at 57–58.

In a categorical taking, " 'all economically viable use, i.e., all economic value, has been taken by the regulatory imposition.' " *Rith Energy*, 247 F.3d at 1362 (quoting *Palm Beach Isles Assocs. v. United States*, 231 F.3d 1354, 1357 (Fed.Cir.2000)). In a categorical taking, the *Lucas* analysis turns on

---

**12.** $105,250 was the value stated for all six Bledsoe County tracts acquired by the Wyatt Trusts in 1973–74, of which the relevant parcel encompasses only the three largest tracts. Def.'s Facts ¶¶ 11–13.

**13.** It is not clear to the court whether the $50,000 received from Mr. Bernos was entirely derived from the relevant parcel, or from the relevant parcel and other properties owned by the Wyatt Trusts. *See* Def.'s Ex. 43 at 601–02 (Wyatt Sr. Dep. at 174–75) (explaining that the Bernos installment sales contract had to be cancelled to make way for the Cane purchase of tracts owned by the Senior Wyatts and the Wyatt Trusts).

the " 'valueless' " nature of the property effected by the government action, which creates "per se" entitlement to compensation. *Seiber,* 364 F.3d at 1368 (quoting *Lucas,* 505 U.S. at 1020–22, 112 S.Ct. 2886). In *Rith Energy,* the Federal Circuit found that when a mining company earned $500,000 in profits by extracting just fourteen percent of the coal it had hoped to mine before it was stopped by regulators, it had recouped enough on its initial investment of $33,500 for a "substantial profit." *Id.* at 1363. Because that profit differed from the " 'total wipe-out' that accompanies a categorical taking," the Federal Circuit found that the government's actions did not constitute a categorical taking. *Id.* (quoting *Palm Beach Isles,* 208 F.3d at 1380).

One of the three factors in the *Penn Central* takings analysis is the economic impact of the regulatory action. *Seiber,* 364 F.3d at 1370. When deciding the *Rith Energy* plaintiff's petition for rehearing, the Federal Circuit noted that the plaintiff made a substantial profit and thus should not prevail under *Penn Central. Rith Energy, Inc. v. United States,* 270 F.3d 1347, 1352 (Fed.Cir.2001) (decision on petition for rehearing). In that case, the plaintiff was deprived of about eighty-six percent of the coal it expected to mine under an existing permit, *see Rith Energy,* 247 F.3d at 1363 (stating that plaintiff had mined "only about 14 percent" of the coal it hoped to extract), but the court found that the diminution in value was not sufficient to support a taking because of the substantial profits earned by the plaintiff, *Rith Energy,* 270 F.3d at 1352.

Plaintiffs show very little diminution in value due to the government action compared to the total value of their property interest in the relevant parcel. The denominator is calculated by adding the $50,000 realized from the Bernos deal, the $1,000,000 realized from the Cane deal and the retained 3.5 % non-participating royalty interest, later estimated in value by plaintiffs to be $128,000, which results in a value of $1,178,000 for the relevant parcel prior to the Unsuitability Determination. The numerator is $128,000, plaintiffs' estimate of the value of the 3.5% non-participating royalty lost due to the Unsuita-

bility Determination, the figure adopted by the court pursuant to the summary judgment standard. *See Litton Indus. Prods.,* 755 F.2d at 163 (requiring the court to "resolve all doubt about factual issues in favor of the party opposing summary judgment"). These figures result in an approximately ten percent diminution in the value of the Wyatt Trusts' relevant parcel. Plaintiffs' counsel conceded that if the court determined the relevant parcel to be the tracts acquired in 1973–74 and sold to Cane, "it's about a 10 percent diminution, not 100 percent." Tr. at 58. Compared to the plaintiff in *Rith Energy,* plaintiffs here show a much more limited diminution in value. And, as did the plaintiff in *Rith Energy,* the Wyatt Trusts earned a substantial profit on their acquisition of the relevant parcel prior to the alleged taking.

For the foregoing reasons, the Wyatt Trusts did not suffer a compensable taking under either a *Lucas* or a *Penn Central* takings analysis.

III. Conclusion

Defendant's Motion for Summary Judgment is GRANTED as to the Wyatts and the Wyatt Trusts on the temporary takings issue, GRANTED as to the Wyatt Trusts on liability for a taking and DENIED as to the Wyatts on the relevant parcel issue and as to the Wyatts on the *Lucas* categorical takings issue. Plaintiffs' cross-motion is GRANTED as to the Wyatts on the relevant parcel issue and on the *Lucas* categorical takings issue and is otherwise DENIED.

IT IS SO ORDERED.