49 CCPA

**Application of Robert B. EGBERT and Alfred Saffer.**

**Patent Appeal No. 6737.**

United States Court of Customs and Patent Appeals.

Feb. 13, 1962.

T. G. Gillespie, Jr., and William C. Long, New York City, for appellants.

Clarence W. Moore, Washington, D. C. (Joseph Schimmel, Washington, D. C., of counsel), for Comm'r of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN and SMITH, Judges.

WORLEY, Chief Judge.

This is an appeal from the decision of the Board of Appeals affirming the examiner's rejection of all claims in appellants' application for a "Process for the Preparation of Ethylene Oxide" as unpatentable over certain prior art. Four claims were also rejected as being too broad.

Claim 5 is representative and reads:

"In a process for producing ethylene oxide by the partial oxidation at superatmospheric pressures of ethylene by means of gaseous oxygen in the presence of a silver containing catalyst, the steps of preventing catalyst inactivation and suppressing excessive formation of carbon dioxide by continuously providing in the reaction zone from about 0.001 to 2 ppm of a halogen material having a boiling point up to about 350°C. based on the gaseous feed mixture."

The references relied on are:

Law et al. (1)      2,279,469      April 14, 1942

Murray, Australian Journal of Scientific Research, Vol. 3A, pages 445–446 (1950).

———◆———

The following references were also cited by the examiner but were regarded by the board as cumulative:

Law et al. (2)      2,194,602      March 26, 1940

Berl      2,270,780      January 20, 1942

McKim et al., Canadian J. Research, Vol. 27B, page 826.

The application relates to a process of producing ethylene oxide by partial oxidation of ethylene in the presence of a silver-containing catalyst, while suppressing the formation of carbon dioxide in that process. The application states that the process, as well as the problem of carbon dioxide formation, was known to the art, as was the fact that the addition of small quantities of ethylene dichloride, e. g., 300 ppm (parts per million) based on the total gas feed, was effective in reducing the carbon dioxide formation, but that such amounts of ethylene dichloride or similar halogen materials had the adverse effect of reducing the activity of the catalyst. Appellants found that the use of a lesser amount of ethylene dichloride, namely, about 0.001 to about 2 ppm, did not have an adverse effect on the catalyst yet maintained the effect of suppressing the carbon dioxide formation. In describing the operating conditions of the process, the application states: "If desired, the reactions may be conducted under pressure, e. g., up to about 25 or more atmospheres." The only other recitation of pressure is found in the single example as "a pressure of about 100 to 200 psig (pounds per square inch gauge)."

The Murray publication relates to the process of oxidizing ethylene to obtain the oxide and recognizes both suppression of carbon dioxide formation and deactivation of the catalyst by the use of ethylene dichloride. It states that deactivation occurs with "minute amounts of ethylene dichloride" and close control of the addition is necessary. It further discloses using ethylene dichloride in concentrations up to 2 ppm. The reference is silent as to the operating pressure of the process. The examiner and the board treated Murray's process as being operated at atmospheric pressure. We shall treat it in like manner.

The Law et al. (1) patent relates to the same process and recognizes the same problems. While calling the halogen material an "anticatalyst," it states that small amounts of that material, less than 0.1% when closely controlled will increase the yields of the olefin oxide while suppressing the formation of carbon dioxide.

After considering the Murray disclosure, the board stated:

"Here then is a run reported with 2 parts per million of the ethylene dichloride which, of course, anticipates appellant's claims. It is evident from the description quoted that runs with even lower amounts were made. We therefore regard Murray as anticipatory of the most specific aspect and the very essence of appellants' proposal. The rejection of the claims on this reference is affirmed."

Appellants concede that Murray employs ethylene dichloride in precisely the claimed range, but allege that Murray observed little change in conversion within that range, and did not operate at "superatmospheric" pressures.

Appellants further contend that the partial oxidation of ethylene "containing some paraffinic material," as recited in claims 3 and 8, forms a part of their invention. In that regard the board noted, as do we, that the prior art processes utilized ethylene containing some paraffines, as evidenced by the McKim et al. reference.

The only other recitation found in the claims which might distinguish over the prior art is the pressure limitation. Claims 7, 8 and 9 contain the expression "at pressures up to about 25 atmospheres," while in the remainder of the claims the phrase "at superatmospheric pressure" is the sole pressure limitation.

The expression "up to about 25 atmospheres" includes, of necessity, atmospheric as well as superatmospheric pressures up to the point specified. Since Murray operates at atmospheric pressure, the claims containing such a limitation cannot distinguish over that reference. We thus find ourselves in agreement with the board as to claims 7, 8 and 9.

In considering the term "superatmospheric" the board noted the two quoted

recitations of pressure found in the specification and stated:

"It is evident from the state of the art that this reaction may be conducted under atmospheric, superatmospheric, or reduced pressure. As far as the original disclosure and claims in this case is concerned, it is a matter of indifference whether superatmospheric pressure is used or not."

The board further stated that it did not think the pressure limitation formed "any part of appellants' alleged contribution."

However, in our opinion the pressure recitation is a limitation of the claims and must be considered. As pointed out in the solicitor's brief, no recitation of pressure is found in the statement of the objects and discoveries allegedly associated with the invention. The specification merely states that, "if desired, the reactions may be conducted under pressure." Further, although two affidavits were filed to show the criticality of the amount of halogen utilized, nothing is present in the record to show the criticality of the pressure limitation. In fact, the first affidavit does not specify any operating pressure, yet reports results similar to those set forth in the second affidavit which specifies a superatmospheric pressure. Since "superatmospheric" encompasses pressure insignificantly higher than atmospheric, and since the prior art has already operated the process over a wide range of pressures, as evidenced by the Law et al. (2) patent we do not think the limitation is of such a nature as to patentably distinguish over the process of the Murray publication. We therefore affirm the board's decision as to remaining claims 2, 3, 5 and 6.

In view of our conclusion, it is unnecessary to pass on the rejection of undue breadth.

The decision is affirmed.

Affirmed.