60 CCPA

**Application of Ellen L. MOCHEL.**
**Patent Appeal No. 8768.**

United States Court of Customs and Patent Appeals.
Dec. 29, 1972.

Clinton S. Janes, Jr., Corning, N. Y., attorney of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents; Fred E. McKelvey, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, ALMOND, BALDWIN, and LANE, Judges.

MARKEY, Chief Judge.

This is an appeal from the decision of the Board of Appeals sustaining the rejection of claims 1–3 of appellant's application for "Strengthened Glass Article", serial No. 550,121, filed May 16, 1966, under 35 U.S.C. § 103 as unpatentable over Republic of South Africa patent No. 62/2352 to Garfinkel.

*The Invention*

The invention relates to glass articles having a base composition of either sodium aluminosilicate ($Na_2O$–$Al_2O_3$–$SiO_2$) or sodium zirconosilicate ($Na_2O$–$ZrO_2$–$SiO_2$) chemically strengthened by an ion exchange reaction wherein sodium ions in a surface layer of the glass are replaced by monovalent metal ions having an ionic diameter larger than that of sodium. The ion exchange process is but the environment of the invention, having admittedly been earlier applied to various glass compositions including the "sodium glasses", as we shall call them, of appellant.

The problem focused upon involves other physical properties of these sodium glasses which render manufacture difficult and use limited. Accordingly,

the crux of the invention is purported to reside in the discovery that the addition of 1–5% magnesium oxide (MgO) to the base composition results in a lowering of the melting point of the glasses while maintaining or even raising the strain point and without adversely affecting the strengthening potential of the glass. A supplemental inclusion of up to 5% potassium oxide ($K_2O$) is claimed to cause a significant rise in the strain point, permitting the ion exchange process to be carried out more rapidly at a higher temperature and allowing the strengthened articles to be used at higher service temperatures. Claim 1 reads as follows:

1. A chemically strengthened glass article exhibiting a modulus of rupture of at least 30,000 psi after being subjected to surface abrasion composed of an interior portion and a surface compressive stress layer of at least 5 microns in depth, said interior portion comprising a base glass consisting essentially, by weight on the oxide basis, of 5–25% $Na_2O$, 5–25% total of at least one member selected from the group consisting of $Al_2O_3$ and $ZrO_2$, and the remainder $SiO_2$, the total $Na_2O$, $Al_2O_3$, $ZrO_2$, and $SiO_2$ constituting at least 80% by weight of the glass composition, and said surface layer having a composition chemically altered from that of the base glass to the extent that said surface layer has a lesser content of sodium with a correspondingly greater content on an ionic basis of a monovalent ion having a larger ionic diameter than sodium, said glass article being characterized by a base glass containing 1–5% by weight MgO to lower the melting point of the base glass and to decrease the difference in temperature between the strain point and the melting point of said base glass.

Dependent claim 2 lists an additional component stated as "up to 5% $K_2O$". Dependent claim 3 restricts the quantities for various components of claim 1

and adds thereto the recitation of "0–5% $K_2O$".

## The Reference

Garfinkel, applying the ion exchange process to lithium aluminosilicate or lithium zirconosilicate glasses ($Li_2O$–$Al_2O_3$–$SiO_2$ or $Li_2O$–$ZrO_2$–$SiO_2$—hereinafter "lithium glasses"), contemplates the optional inclusion of up to 15 mol per cent "other silicate glass components", such as $K_2O$, and "divalent oxides" in the base composition. Disclosing that "in general, these oxides, except for $TiO_2$, appear to diminish the strengthening potential", Garfinkel further states that these oxides may "be desirable as an aid in melting, particularly where the lithia content is low, as an aid in reducing devitrification tendencies, and as an aid in improving durability and modifying such properties as refractive index." The exemplary compositions of Garfinkel include two containing MgO (3.2% and 2.8%) and two others containing $K_2O$ (7.4% and 1.4%).

## The Board's Decision

The board sustained the examiner's rejection of claims 1–3 under 35 U.S.C. § 103 as unpatentable over Garfinkel. "Disregarding" the effect of $K_2O$, because it may or may not be present, the board agreed that MgO in appellant's composition lowered the melting temperature of the base glass without change in the strain point temperature, noting however that the strength of the final product was lowered by 6.8%. The board considered the reduced melting temperature a "dubious advantage in the final product" and described the decrease in strength as "another" deficiency. The relationship between a lowered melting temperature and a constant strain point temperature was dismissed as merely a process advantage and not an attribute of the final product claimed.

Considering the claims from a process viewpoint as "in little better position", the board cited Garfinkel's employment

of MgO (and $K_2O$); the examiner's statement that MgO is "notoriously well known" as a means for lowering the melting point of glasses; and Garfinkel's reference to divalent oxides as aids in melting quoted above. The Rule 132 affidavit of Dr. Rauscher was dismissed as being "too general or too ambiguous and too much lacking in factual support to carry much weight." The board concluded that "the claimed glass product would have been obvious to a person of merely ordinary skill in the subject and from the references [sic] relied on."

## Opinion

■ We join the board in disregarding any coeffect of $K_2O$ (claims 2 and 3). As this Court has held, the phrase "up to" of claim 2 includes zero as the lower limit. Arness v. Franks, 138 F.2d 213, 31 CCPA 737 (1943); accord, In re Egbert, 298 F.2d 947, 49 CCPA 888 (1962). Claim 3 explicitly includes 0%. Inclusion of $K_2O$ not being mandatory, either in the minimum quantity shown in appellant's examples (3%) or in any quantity, we limit our consideration to the invention as set forth in claim 1.

Thus the sole issue lies in whether, in view of Garfinkel, it would have been obvious at the time the invention was made to a person having ordinary skill in the art to add MgO to sodium glasses subsequently subjected to ion exchange.

We find the heart of the rejection clearly stated in the Examiner's Answer:

* * * It is patentably immaterial that the base glass disclosed by Garfinkel is a lithium aluminosilicate or zirconia silicate while that recited herein is a sodium aluminosilicate or zirconia silicate, since for purposes of chemically strengthening glass they are essentially equivalents which are used interchangeably depending upon whether lithium or sodium ion exchange is desired. Thus it is *fair to assume* that the effect of secondary compositional components would be identical whichever glass were used. Therefore, it would be obvious to one of ordinary skill in the art to add the alternative compositional components MgO and $K_2O$ as disclosed by Garfinkel to the well-known sodium aluminosilicate or zirconia-silicate glass within the specific ranges therein disclosed to achieve the beneficial results recognized as arising therefrom. [Emphasis ours.]

Appellant strongly contests this assumption of equivalence of sodium glasses with lithium glasses insofar as the effects of secondary glass constitutents are concerned. She points out the absence of any teaching by Garfinkel of the specific purpose for MgO addition to lithium glasses and the lack of supporting evidence for the examiner's bald assertion that the use of MgO in glass compositions, especially for the purpose of lowering the melting point, is "notoriously well-known". It is urged that consideration should be given to the Rule 132 affidavit of Dr. Rauscher submitted to contradict this assumption of identity between effects of secondary glass components in sodium and lithium base compositions. The solicitor, on the other hand, maintains that a case of prima facie obviousness has been established and centers his attack, with telling accuracy, on the alleged evidence of unexpected results advanced by appellant in rebuttal thereof.

We find nothing in the record to suggest that secondary components, such as MgO, may be used interchangeably and with identical effect in sodium and lithium glass compositions, whether or not subsequently chemically strengthened by ion exchange. The Garfinkel disclosure is restricted to lithium glasses. It does not mention the precise effect of or purpose for MgO, does not specifically identify the function of any particular "divalent oxide" and does not label MgO as "an aid in melting".

Nor does the unsupported statement of the examiner that use of MgO to lower

the melting point of glass compositions is well known provide the missing link. While it may be strictly true, as the board found, that appellant made no "direct challenge" of that statement, she has persistently emphasized the absence of any supporting reference for it. The statement itself is very general, lacking any information regarding conditions of prior use or known limitations on such use, such as concomitant disadvantages. Although the appellant leaves some confusion as to her position, she plainly did not admit a state of the art which would have made it obvious to use MgO in her sodium glasses. Hence the absence of support for the examiner's statement is critical.

 We have not overlooked discussion in appellant's application of widespread prior art use of fluxing oxides to reduce the melting point of glasses. We note however that each such discussion included allegations of concomitant disadvantages which do not occur with the addition of MgO to sodium glasses. Further, the Rauscher affidavit provides statements by an expert in the field that secondary components, such as MgO, have differing effects on the physical properties of lithium and sodium glasses in particular. Expert opinion is entitled to be given consideration along with other evidence on the issue of obviousness. In re Sebek, Cust.Ct. & Pat.App., 465 F.2d 904 (1972); In re Fay, 347 F.2d 597, 52 CCPA 1483 (1965). Affiant's statements here serve to rebut the generalization that MgO necessarily acts as a flux in glasses and the assumption that its effect would be "identical" in lithium and sodium glasses.

We need not adjudge at this time either the adequacy of unexpected results alleged by appellant to rebut a properly established case of prima facie obviousness or the apparent contradictions between those results and appellant's examples. Nor must we pass on the propriety of the board's distinction between process advantages and product attributes in relation to characteristics such as melting temperatures.

No suggestion appears in the record of a purpose for including MgO in sodium glasses and no teaching of identical effects of secondary components in sodium and lithium glasses. We do not consider it "fair to assume" such identity. We cannot, therefore, sustain the finding of prima facie obviousness.

The decision of the board is reversed.

Reversed.