**Salvador CORNEJO–ORTEGA, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 03–1987C.

United States Court of Federal Claims.

July 23, 2004.

Rand P. Nolan, Fleming & Associates, LLP, Houston, TX, for plaintiff.

James D. Colt, U.S. Department of Justice, Washington, D.C., with whom was Assistant Attorney General Peter D. Keisler, for defendant.

## OPINION

ALLEGRA, Judge.

In this case, before the court on defendant's converted motion for summary judgment, plaintiff seeks payment of $2.2 million under a purported reward contract with the Department of Justice for information leading to the arrest of a top-ten most-wanted fugitive. For the reasons that follow, the court concludes that defendant is entitled to judgment as a matter of law.

## I. BACKGROUND

In 1999, while incarcerated, Salvador Cornejo–Ortega (plaintiff) was contacted by agents of the Federal Bureau of Investigation (FBI) and the Drug Enforcement Agency (DEA) concerning one Agustín Vásquez–Mendoza. Mr. Vásquez–Mendoza was wanted by the FBI and the DEA for the kidnapping, armed robbery, aggravated assault, and first-degree murder of DEA Special Agent Richard Fass. The agents believed plaintiff had information about Mr. Vásquez–Mendoza's whereabouts because both men were from Michoacán, Mexico.

In a letter dated October 4, 1999, Assistant United States Attorney Albert A. Balboni, from the Southern District of Texas, informed plaintiff: "I have been advised … that you possess information which you believe may be helpful [in identifying] … the location of [Mr. Vásquez–Mendoza]." This letter further indicated that–

> [t]he purpose of this letter is to advise you if the United States, in its sole discretion, determines that the information you provide regarding [Mr. Vásquez–Mendoza] substantially assists the United States in the location, apprehension, extradition and conviction of [Mr. Vásquez–Mendoza], it may file a Rule 35 motion to reduce your sentence in the [criminal charges against you].

Approximately two weeks later, on October 18, 1999, plaintiff received a similar letter from Don Clark, FBI Special Agent in Charge (SAC) in Houston, Texas, in which Special Agent Clark indicated that he likewise was aware that plaintiff might possess information helpful in locating Mr. Vásquez–Mendoza. Special Agent Clark indicated that "various branches of the United States government are offering rewards in the total amount of $2,200,000 for the location, apprehension, extradition, and conviction" of Mr. Vásquez–Mendoza. This letter further advised:

> if the information you provide were to assist the United States government in the location, apprehension, extradition, and conviction of [Mr. Vásquez–Mendoza], the Federal Bureau of Investigation is prepared to ensure that you are given appropriate consideration for any reward offered by the FBI and will make other agencies within the United States government offering these rewards aware of your assistance for consideration in the granting of any other rewards.

By way of further factual background, in a sworn affidavit attached to his response to the government's motion, plaintiff affirmed that during a meeting with certain unidentified DEA and FBI agents, he agreed to attempt to locate Mr. Vásquez–Mendoza in exchange for a shortened sentence and a reward of $2.2 million. Plaintiff further declared that, to confirm their agreement, the agents handed him a copy of a reward poster showing Mr. Vásquez–Mendoza with the type-faced words "reward up to $2,200,000" above the photograph and that the agents indicated a reward would be paid in that amount for the arrest of Mr. Vásquez–Mendoza.

On July 8, 2000, Mr. Vásquez–Mendoza was apprehended in Mexico. In a letter dated August 24, 2000, the Assistant District Director for Investigations of the Immigration and Naturalization Service, Organized Crime Drug Enforcement Task Force, informed Assistant United States Attorney Balboni that "[plaintiff] was instrumental in initiating current and 'fresh' leads to facilitate the apprehension" of Mr. Vásquez–Mendoza. On June 12, 2001, the FBI paid plaintiff a $12,500 reward for the capture of Mr. Vásquez–Mendoza, who, at the time of his apprehension, was one of the FBI's ten most wanted fugitives. The payment was one of four equal installments of a $50,000 reward the FBI split among four individuals, including plaintiff, for information that led to the apprehension of Mr. Vasquez–Mendoza. Defendant contends, and plaintiffs does not disagree, that the $12,500 payment was made pursuant to the FBI's Top Ten Most Wanted Fugitive Program.

On August 22, 2003, plaintiff filed suit in this court asserting that defendant had breached its contract to pay him $2.2 million for the information he provided that led to the arrest of Mr. Vásquez–Mendoza. Defendant filed its motion to dismiss, or, in the alternative, for summary judgment, on De-

cember 22, 2003. That same day, this court converted defendant's motion to dismiss to one for summary judgment under RCFC 56(b). On March 1, 2004, plaintiff filed an Opposition to Defendant's Motion to Dismiss, including attachments, and on March 8, 2004, defendant filed a Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss. Having carefully reviewed these filings, the court deems oral argument on this matter unnecessary.

## II. DISCUSSION

It is axiomatic that summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Disputes over facts that are not outcome determinative will not preclude the entry of summary judgment. *Id.* In the absence of factual disputes, the question of contract formation is a question of law. *Trauma Serv. Group v. United States,* 104 F.3d 1321, 1325 (Fed.Cir.1997); *Ransom v. United States,* 900 F.2d 242, 244 (Fed.Cir. 1990).

The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Cane Tenn., Inc. v. United States,* 60 Fed.Cl. 694, 698 (2004). If the moving party demonstrates an absence of a genuine issue of material fact, the burden then shifts to the non-moving party to show that a genuine issue exists. *Sweats Fashions, Inc. v. Pannill Knitting Co.,* 833 F.2d 1560, 1562–63 (Fed.Cir.1987). The movant is also entitled to summary judgment if the non-movant fails to make a showing sufficient to establish an element of its case on which it will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Cane Tenn.,* 60 Fed. Cl. at 698. The court must resolve any doubts about factual issues in favor of the party opposing summary judgment, *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.,* 755 F.2d 158, 163 (Fed.Cir.1985), to whom the benefits of all favorable inferences and

presumptions run, *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1574 (Fed.Cir. 1984).

Plaintiff alleges that he had an express oral contract with the government. However, his claims regarding the nature and parameters of that contract have shifted somewhat over time. Initially, in his complaint, he alleged that under a reward agreement, he was entitled to "up to" $2.2 million, a claim consistent with two of the letters in the record. But, the second of those letters—the only one to discuss specifically the potential for an award—indicates only that plaintiff would receive "appropriate consideration" for a reward. In his complaint and particularly in responding to defendant's motion for summary judgment, plaintiff also claims that he met with unidentified FBI and DEA agents, who unqualifiedly agreed to pay him the fixed sum of $2.2 million in exchange for information leading to the arrest and apprehension of Mr. Vásquez–Mendoza. While the second version of the purported contract obviously bolsters plaintiff's case, plaintiff has supplied scant details about the meeting that gave rise to this alleged agreement—indeed, his affidavit does not disclose any details regarding the identities of the agents with whom he met or even the general date of that alleged meeting. In fact, for the reasons that follow, neither version of the contract he alleges survives the government's motion for summary judgment.

For plaintiff to recover on his breach of contract claim, he must establish the existence of a valid contract with defendant and a breach of a duty created by that contract. *San Carlos Irrigation & Drainage Dist. v. United States,* 877 F.2d 957, 959 (Fed.Cir.1989). A party alleging either an express or implied-in-fact contract with the United States must demonstrate: (i) mutual intent to contract; (ii) offer; (iii) acceptance; and (iv) consideration. *Trauma Serv. Group,* 104 F.3d at 1325; *City of El Centro v. United States,* 922 F.2d 816, 820 (Fed.Cir.1990). In addition, plaintiff must show that the government employee who entered or ratified the agreement had actual authority to contract. *Trauma Serv. Group,* 104 F.3d at 1325. "[T]he government is not bound by the acts

of its agents beyond the scope of their actual authority." *Harbert/ Lummus Agrifuels Projects v. United States,* 142 F.3d 1429, 1432 (Fed.Cir.1998) (citing *Fed. Crop. Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 92 L.Ed. 10 (1947)). When an agent exceeds his authority, the government can "disavow the [agent's] words and is not bound by an implied contract." *Essen Mall Properties v. United States,* 21 Cl.Ct. 430, 445 (1990). Thus, the court must determine "whether plaintiff has submitted sufficient evidence to establish a disputed issue of fact as to whether the [Agents] with whom he allegedly dealt had [actual] authority contractually to obligate the Government." *Roy v. United States,* 38 Fed.Cl. 184, 188 (1997).

■ In this case, plaintiff has not shown that any of the parties with whom he dealt had the authority to enter into a reward contract of the sort he alleges. This court has recognized that "[a]s a general rule, DEA Field Agents and FBI Special Agents lack the requisite actual authority—either express or implied—to contractually bind the United States to remit rewards to confidential informants/cooperative witnesses." *Humlen v. United States,* 49 Fed.Cl. 497, 503 (2001); *see also Roy,* 38 Fed.Cl. at 188–91; *Khairallah v. United States* 43 Fed.Cl. 57, 63 (1999); *Cruz–Pagan v. United States,* 35 Fed.Cl. 59, 61 (1996). Indeed, while the statutory basis for the alleged contract in question is unclear, a review of the relevant provisions of the DEA Manual and the FBI Manual consistently reveals that none of the officials with whom plaintiff conceivably dealt was authorized to enter into a reward agreement of the magnitude plaintiff alleges—indeed, these provisions suggest that the only person at the Justice Department authorized to enter into such agreements is the Attorney General himself.[1] Accordingly, none of the individuals with whom plaintiff allegedly

dealt remotely had the actual authority to enter into an agreement of the sort he alleges.

Nor did any of these individual possess the implied actual authority to bind the government to such an agreement. Actual authority may be implied when the necessary authority is considered to be an "integral part of the duties" of the particular government employee. *H. Landau & Co. v. United States,* 886 F.2d 322, 324 (Fed.Cir.1989). In the instant case, the agents with whom plaintiff allegedly dealt lacked implied actual authority for at least two reasons. First, entering into such contracts was not an integral part of their duties. *See Humlen,* 49 Fed.Cl. at 503–504; *see also Khairallah,* 43 Fed.Cl. at 63 (DEA field agents do not have implied actual authority to enter agreements because the grant of contracting authority is not integral to their duties) (citing *Cruz–Pagan,* 35 Fed.Cl. at 63); *Roy,* 38 Fed.Cl. at 188–191 (contracting authority is not essential or necessary for FBI Special Agents to perform effectively their tasks of developing, controlling and supervising confidential informants). Second, there can be no implied actual authority where, as here, express provisions limit the ability of an individual to enter into a particular type of contract or arrangement. *See Tracy v. United States,* 55 Fed.Cl. 679, 683–84 (2003); *see also Northrop Grumman Corp. v. United States,* 47 Fed.Cl. 20, 63 (2000) ("[I]mplied actual authority may not inhere in a government employee when regulations preclude that employee from exercising contracting authority."); *Sam Gray Enters. v. United States,* 43 Fed.Cl. 596, 603 n. 10 (1999), *aff'd,* 250 F.3d 755 (Fed.Cir.2000); *Roy,* 38 Fed.Cl. at 189–91; *Cal. Sand & Gravel, Inc. v. United States,* 22 Cl.Ct. 19, 27 (1990), *aff'd,* 937 F.2d 624 (Fed.Cir.1991), *cert. denied,* 502 U.S. 1057, 112 S.Ct. 934, 117 L.Ed.2d 105 (1992). As this court has stated,

---

1. *See* FBI Manual § 32–2(1) (1999) (indicating that SACs can approve reward offers up to $20,000 and that "a reward of $100,000 or more should not be offered without first obtaining the Attorney General's approval for payment"); DEA Manual § 6612.61(B), (C) (1998) (indicating that the Calendar Year cap and Lifetime cap payments to Confidential Sources are limited to $100,000 and $200,000 respectively, and that payments over those amounts require approval

by the DEA's Operations Management); *see also* United States Attorney's Manual §§ 3–2.140, 3–8.130 (1999) (defining the authority of United States Attorneys, indicating such authority does not include contracting for informant rewards and indicating that obligating the government to expend funds beyond the districts' litigation budget requires approval from the Executive Office for United States Attorneys).

"[t]he doctrine of implied actual authority cannot be used to create an agent's actual authority to bind the government in contract when the agency's internal procedures specifically preclude that agent from exercising such authority." *Bailey v. United States,* 54 Fed.Cl. 459, 504–05 (2002), *aff'd,* 94 Fed. Appx. 828 (Fed.Cir.2004).

As a result, even if any of the DEA or FBI agents with whom plaintiff dealt had promised to pay him $2.2 million, such a promise would be unenforceable at law. In its response to defendant's motion, plaintiff largely fails to address the authority issue. While plaintiff notes that there has been no formal discovery in this case,[2] he does not explain why, based on his own recollections, he cannot provide a more detailed account of the meeting that he claims gave rise to the alleged agreement, including, for example, the names of the agents with whom he dealt. Plaintiff certainly has not identified anyone who would remotely have the authority to enter into the type of multi-million dollar contract he alleges. Because plaintiff has failed adequately to address the issue of authority to contract, he has failed to carry his burden, as the non-moving party, to show that a genuine issue exists.[3]

Finally, the court rejects plaintiff's claim that a binding contract arose when he accepted, by performance, the reward promised by the reward poster he was allegedly handed in prison. Plaintiff essentially argues that because this poster was issued by the United States, *qua* United States, no authority issue arises. Assuming, *arguendo,* this is true, the fact remains that the poster only offered a reward "up to" $2.2 million. The quoted phrase has been construed to include zero as its lower limit. *See Application of Mochel,* 470 F.2d 638, 640 (C.C.P.A.1972); *Arness v. Franks,* 31 C.C.P.A. 737, 138 F.2d 213, 216 (1943); *see also Public Service Comm'n of Md. v. City of Annapolis,* 71 Md.App. 593, 526 A.2d 975, 981 (1987) ("the statement of a maximum does not imply the existence of a minimum"). Words such as this give rise only to an illusory promise, or more accurately, no promise at all. As stated in the Restatement (Second) on Contracts–

> Words of promise which by their terms make performance entirely optional with the 'promisor' whatever may happen, or whatever course of conduct in other respects he may pursue, do not constitute a promise. Although such words are often referred to as forming an illusory promise, they do not fall within the present definition of promise. They may not even manifest any intention on the part of the promisor.

*See* Rest. (Second) Contracts § 2, cmt. e; *see also United States v. Winstar Corp.,* 518 U.S. 839, 921, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996) (Scalia J., concurring); *Torncello v. United States,* 231 Ct.Cl. 20, 681 F.2d 756, 760 (1982) ("[A] party may not reserve to itself a method of unlimited exculpation without rendering its promises illusory and the contract void."). Viewed in light of these principles, the reward poster served, at best, as an invitation to contact the DEA or the FBI and negotiate a reward agreement that would meet the various procedural requirements contained in the Justice Department's manuals.[4] Indeed, were the poster viewed otherwise, the detailed procedural require-

---

**2.** As noted, on December 22, 2003, this court converted defendant's motion to dismiss into a motion for summary judgment. In his response, plaintiff sought to conduct discovery to develop evidence to defeat the government's motion. Although this request was not specific, the court views it as one to conduct discovery under RCFC 56(f). However, that rule applies only if the requesting party's affidavits demonstrate that he is unable to justify his opposition without discovery. In the instant case, plaintiff's affidavits do not disclose specific information that seemingly he should be able to recall; moreover, since the Attorney General, or at least a high-ranking Justice official, would have had to authorize a reward agreement of the magnitude plaintiff contends, discovery almost assuredly would present no opportunity for plaintiff to prevail. In these circumstances, discovery under RCFC 56(f) is unwarranted.

**3.** The court notes that plaintiff has not asserted that any Department of Justice official with requisite authority ratified the alleged reward agreement. *Compare Janowsky v. United States,* 133 F.3d 888, 891–92 (Fed.Cir.1998).

**4.** The court notes that in an affidavit attached to defendant's brief, William Haman, the Chief Division Counsel of the FBI's Field Office in Houston, Texas, affirmed that the $12,500 that plaintiff received was pursuant to the FBI's Top Ten Most Wanted Fugitive Program, and that this

ments for authorizing rewards would be rendered a nullity every time a poster is issued—a result that makes no sense and, at all events, is squarely foreclosed by the above authorities. *See Doe v. United States,* 58 Fed.Cl. 479, 484 (2003); *Khairallah,* 43 Fed.Cl. at 64.

The court fully understands that plaintiff may honestly believe that the individuals with whom he dealt were actually authorized to commit the United States to pay the reward in question. But, as plaintiff candidly admits in his brief, "anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the government stays within the bounds of his authority ... [and] this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority." *Fed.Crop Ins. Corp.,* 332 U.S. at 384, 68 S.Ct. 1; *see also Total Med. Mgmt., Inc. v. United States,* 104 F.3d 1314, 1321 (Fed.Cir.1997). Accordingly, the fact that plaintiff acted upon this understanding does not entitle him to relief here. *Office of Pers. Mgmt. v. Richmond,* 496 U.S. 414, 434, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990) (holding claims of estoppel against the Government will not lie). This is particularly so, since the Tucker Act does not give a right of action against the United States in those cases where, if the transaction were between private parties, recovery could be had upon a contract implied in law. *Merritt v. United States,* 267 U.S. 338, 341, 45 S.Ct. 278, 69 L.Ed. 643 (1925).

## III. CONCLUSION

This court need go no further. Based on the foregoing, the court concludes that defendant is entitled to judgment as a matter of law. The Clerk is ordered to dismiss plaintiff's complaint. No costs.

**IT IS SO ORDERED.**

---

payment "was not a portion of the $2,200,000 reward that is the subject of Plaintiff's Complaint." The court does not construe this statement as suggesting that the $12,500 plaintiff received cannot be viewed as compensation for the capture of Mr. Vásquez–Mendoza. As such, it would appear that plaintiff already has received a sum within the range specified in the reward poster. *See Roy,* 38 Fed.Cl. at 191.